## Felix v. Wax

S. *Regen Ginsburg*, for Dr. Herbert Felix, Dr. Arnold W. Newman and Dr. Theodore A. Engle, and the Chiropody Society of Pennsylvania, plaintiffs.

*Wilbur H. Haines, Jr.,* for the Philadelphia County Medical Society, Dr. John T. Farrell, Jr., Dr. Malcolm W. Miller and Dr. Edward P. VanTine, plaintiffs.

*Bernard M. Borish,* of *Wolf, Block, Schorr & Solis-Cohen,* for defendant.

*Frank F. Truscott,* for Pennsylvania Chiropractic Association, amicus curiae.

MILNER, J., May 29, 1958.—We have before us for consideration two actions in equity which have been instituted by individual chiropodists and physicians and their respective professional associations to restrain defendant from invading their professions by practicing chiropody and medicine. Defendant is a doctor of chiropractic duly licensed by the Department of Public Instruction of the Commonwealth of Pennsylvania, through its State Board of Chiropractic Examiners. Counsel for the Pennsylvania Chiropractic Association has also entered appearance in the case as amicus curiae, but the association has not entered the case as a party to the action. The issue presented for preliminary determination is whether plaintiffs have standing to maintain this equity action, or whether such action may be maintained only through the Department of Public Instruction, or any of its departmental administrative boards, commissions or officers.

The Act of April 18, 1949, P. L. 492, sec. 1, 71 PS §1036.1, provides as follows:

"The Department of Public Instruction, or any of its departmental administrative boards, commissions, or officers, upon the advice of the Attorney General, may maintain, as hereinafter provided, an action, in the name of the Commonwealth, for an injunction or other process against any person to restrain or prevent his practicing any profession in a public or private capacity, or engaging in any trade or occupation;

or against any person, copartnership, association, or corporation establishing, conducting, or operating a private school or class without a license, whenever a license to engage in such activity is required by law and such licenses are issued by the Department of Public Instruction."

Defendant contends that this statute establishes an exclusive procedure for enjoining unlawful practice of a profession, that the standards of professional conduct must be uniformly maintained throughout the Commonwealth and such uniformity may be achieved only by having the standards formulated by the various boards in the Department of Public Instruction.

The important distinction to be borne in mind is that these are *not* actions to enjoin the practice of chiropractic in an unlawful manner, but actions to enjoin the unauthorized practice of medicine and the unauthorized practice of chiropody. It appears clear that prior to the Act of 1949 a duly licensed member of a profession had standing to invoke the jurisdiction of a court of equity to enjoin the unauthorized practice of his profession by an unlicensed practitioner.

In Childs v. Smeltzer, 315 Pa. 9 (1934), the injunctive action was prosecuted by lawyers individually and as members of the committee on unauthorized practice of law of the Philadelphia Bar Association. In Shortz v. Farrell, 327 Pa. 81 (1937), an injunction issued at the instance of attorneys as individuals and representing the Wilkes-Barre Law and Library Association. In Neill v. Gimbel Brothers, Inc., 330 Pa. 213 (1938), the action to enjoin the unauthorized practice of optometry was brought by optometrists, individually and as trustees of the Philadelphia Optometric Association. In Palmer v. O'Hara, 359 Pa. 213 (1948), the action to enjoin the unauthorized practice of medicine was brought by physicians indi-

vidually and as members of the Medical Society of the State of Pennsylvania.

After the adoption of the Act of 1949 the Supreme Court entertained an action to enjoin the unauthorized practice of dentistry which was brought by dentists individually and on behalf of the committee on unauthorized practice of dentistry of the Odontological Society of Western Pennsylvania: Boggs v. Werner, 372 Pa. 312 (1953). Although the Act of 1949 was not interposed as a bar to maintenance of this action we may assume that the Supreme Court was of the opinion that the lower court had equitable jurisdiction in the matter, since the Supreme Court has and exercises the power to raise jurisdictional questions sua sponte. In the Boggs case the very question considered was whether there was equitable jurisdiction in the court. Mr. Justice Allen M. Stearne referred to Mr. Justice (now Chief Justice) Jones' opinion in Palmer v. O'Hara, supra, as follows, at page 317:

". . . In the case last cited, Mr. Justice Jones said for the court at p. 227: 'Equity's jurisdiction under the Act of June 16, 1836, P. L. 784, 17 PS §41, as amended, to restrain the Secretary of Welfare for the Commonwealth from condoning and encouraging the practice of medicine by persons not licensed under the Medical Practice Act of 1911, as in the instant case, is neither questioned nor open to question. The jurisdiction is invokable on the complaint of a duly licensed member of the profession unlawfully so invaded: Harris v. State Board of Optometrical Examiners, 287 Pa. 531, 534, 135 A. 237. And, that is so notwithstanding a penal remedy is provided for the redress of the offense: . . .' No valid reason can be found for treating the dental profession differently from those enumerated above."

The argument that uniformity can be achieved only by having standards declared by the respective pro-

fessional boards in Harrisburg is unrealistic and is not of persuasive merit. Each professional board is composed of members of its own profession and as between different boards there is an undoubted conflict in interest. Thus it is certainly a reasonable expectation that each board will endeavor to expand the scope of its own profession and limit the scope of competitive professions. Indeed it may well be doubted that any board is capable of impartially defining the boundaries of its own or a competitive profession. Disparity in definition will not be created by the various county courts for the simple reason that the Supreme Court of this Commonwealth supplies the desired uniformity of definition as in all other cases.

It must be borne in mind that it has always been held that a professional man has standing to prevent the improper invasion of his profession. We need not, at this time, discuss in any great detail the underlying elements of this right, further than to note that the right to practice a profession is for many equitable purposes a property right; that such injunctive action is in the nature of a suit to restrain improper and unlawful competition; that each professional man bears a responsibility to the public for the proper practice of his profession and that suit to enjoin improper professional practice is a proper effort to enjoin a public nuisance.

We would require a clear legislative mandate before we would deem such standing to have been abrogated. The improper and unlawful practice of a profession is necessarily and initially a local problem, and fellow local practitioners are looked to for superintendence of their practice. There is an increasing and undesirable tendency in government, particularly in administratively-governed matters, to commit individuals to the seat of government for redress. Such procedure

aids in the destruction of the substantive right because it requires the individual to be heard far from his home, it increases the expense of the proceeding and tends to deprive him of local counsel of his free choice. We are therefore of the opinion that from the viewpoint of desirability it should be held that the local county court has jurisdiction of such action. There is no question of venue since the acts complained of occurred in Philadelphia County and, in any event, section 2 of the Act of 1949, 71 PS §1036-2, provides for local venue.

Defendant relies upon section 13 of the Act of March 21, 1806, P. L. 558, 46 PS §156, which states:

"In all cases where a remedy is provided, or duly enjoined, or anything directed to be done by any act or acts of assembly of this commonwealth, the directions of the said acts shall be strictly pursued . . ."

This sometimes overworked act prescribes strict pursuit of a statutory remedy, but we do not entertain the belief that it was intended to curtail common law remedies which run to individual redress. A review of the language of the Act of 1949 and the various statutes regulating professions in this Commonwealth contraindicates any legislative intention to bar action of this type. The Act of 1949 provides that the Department of Public Instruction or any of its departmental administrative boards "upon the advice of the Attorney General may maintain" such an action; it does not purport to be mandatory in nature. While the word "may", of course, can be given the mandatory character of the word "shall" or "must" where necessary to effect legislative intent or where a statute directs the doing of a thing for the sake of justice: Hotel Casey Company v. Ross, 343 Pa. 573, 579 (1942); Melnick v. Melnick, 147 Pa. Superior Ct. 564, 571 (1942), it ordinarily is employed in the permissive sense; we are of the opinion it was not used in the mandatory sense in the

Act of 1949, but that the legislature deliberately chose the permissive, elective word.[1]

If it is necessary to enforce the provisions of the licensure act with respect to a licensee, the Attorney General may advise the proper department to take appropriate legal proceedings and such action may be taken, but as indicated above, the Department of Public Instruction comprehends many professions and as a matter of administrative expediency it may deem it advisable not to enter into a dispute as to definition in a case such as the one at bar. In this case the action is to enjoin a person who is not licensed to practice medicine and surgery or chiropody from doing so. He is unlicensed as to the professions which it is alleged he has invaded. The matter is therefore not one in which the department is called upon to "police", as it were, a holder of its license to practice chiropody.

This situation was brought to the attention of the Attorney General's department and upon the advice of the Attorney General that no useful purpose would be served by its intervention, the Board of Medical Education and Licensure elected not to intervene and so notified counsel for the Philadelphia County Medical Society. The same reasoning applies to the action by the Chiropody Society of Pennsylvania's complaint. In other words, the Attorney General, upon whose advice under the terms of the Act of 1949 the Department may take action, deemed it unnecessary to intervene or supersede the local complainants who have brought an action in equity against a person who they allege has invaded their professions.

The legislature seems to have left just such election to the Department ,and the Attorney General. Section 4 of the Act of 1949, 71 PS §1036.4 provides that:

---

[1] See Commonwealth v. Garland, decided by our Supreme Court May 26, 1958, 393 Pa. 45, 51 (Note 5).

"No action brought under the provisions of this act shall prevent the prosecution or institution of any civil or criminal action otherwise provided by law for violation of any licensing act or departmental rule or regulation promulgated thereunder." This language is broad enough to save plaintiffs' standing in equity.

Professional regulatory statutes [2] governing physicians, dentists, osteopaths, optometrists, chiropodists and chiropractors are similar in pattern. They define the profession, establish a board composed entirely of licensed members of that profession, prescribe duties and power as to supervision and regulation of that profession and provide for licensing examinations and procedures. Each statute contains a penal section making unlicensed practice of that profession a misdemeanor and sets forth no further remedies against unlicensed practice. We are not here concerned with a question of the power and responsibility of each board to police and otherwise regulate its own profession. As to questions of professional misconduct, suspension and revocation of licenses, we are in agreement that such matters should be confined to proceedings before and consideration by the board which governs that profession. We do not agree that such jurisdiction is exclusive [3] where the question involved is an unlawful and unlicensed invasion of a profession.

The defendant cites Snyder v. Oestreich, 9 D. & C. 2d 92 (1956), wherein Judge Levinthal held that in-

---

[2] See Medical Practice Act of June 3, 1911, P. L. 639, 63 PS §401 et seq.; The Dental Law of May 1, 1933, P. L. 216, as amended, 63 PS §120 et seq.; Osteopathic Act of March 19, 1909, P. L. 46, 63 PS §261 et seq.; Optometric Act of March 30, 1917, P. L. 21, 63 PS §231 et seq.; Chiropody Act of March 2, 1956, P. L. (1955) 2306, 63 PS §42.1 et seq.; Chiropractic Registration Act of August 10, 1951, P. L. 1182, 63 PS §601 et seq.

[3] A State board may, of course, upon advice of the Attorney General, elect to proceed against an unlicensed practitioner: Commonwealth v. McNatt, 84 D. & C. 479 (1952).

dividual practitioners were without standing to maintain an equity action for the enjoinder of the practice of optometry in an unlawful manner, in support of his position. We read the case to precisely the opposite effect, which may be demonstrated by two quotations from that opinion:

"Our research has not disclosed any case in which equity has undertaken to enjoin a licensed practitioner from practicing a profession which the legislature has sought to regulate by a system of licensure. *There can be no doubt of our jurisdiction to enjoin unlicensed persons from practicing such professions.* See *Boggs v. Werner*, 373 Pa. 312 (1953). However, we doubt that such jurisdiction should be exercised to control the conduct of a practitioner whose license has not been suspended or revoked by the board which controls licensure. It appears to us that the scheme of regulation enacted here gives the licensing board exclusive authority over charges against licensed persons and that *it contemplates the exercise of equity jurisdiction only over unlicensed persons*": Pages 96-97 (Italics supplied).

"In our opinion the regulatory statute gives the licensing board exclusive authority to hear and dispose of charges brought against licensed optometrists; *it contemplates an exercise of equity jurisdiction over such persons only in the event their licenses are suspended or revoked.* A court of equity should not undertake to control the practice of a licensed practitioner on the ground that it is thereby preventing an unlicensed person from practicing the profession, at least in cases such as this, where it appears that the unlicensed person may be effectively controlled in an action brought directly against him. A contrary holding might conceivably result in the formulation of varying standards of professional conduct in different counties, some consistent with and others inconsistent

with standards formulated by the board for the entire profession": Pages 97-98. (Italics supplied).

The distinction between this case and the Snyder case is patent. As to these plaintiffs and the professions of chiropody and medicine, defendant is unlicensed and his actions, if otherwise improper, may be enjoined. Defendant's license as a doctor of chiropractic is irrelevant to the present question of *jurisdiction*. If defendant's actions are made legal by the scope of his chiropractic license, he will have a defense. Until such defense is established, we regard only the allegations that he is practicing chiropody and medicine without a license in either of these fields. The alleged unauthorized acts of defendant took place in Philadelphia County and the venue of these actions is in this court.

The parties are granted leave to bring this matter forward for trial.