## CONNECTICUT STATE MEDICAL SOCIETY ET AL. *v.* CONNECTICUT BOARD OF EXAMINERS IN PODIATRY ET AL.
### (12938)

PETERS, C. J., HEALEY, SHEA, SANTANIELLO and KULAWIZ, Js.

Argued February 6—decision released April 21, 1987

*Linda L. Randell,* with whom was *Jeanette C. Schreiber,* for the appellants (plaintiffs).

*Elizabeth Harrison Hadley,* assistant attorney general, with whom were *Richard J. Lynch,* assistant attorney general, and, on the brief, *Joseph I. Lieberman,* attorney general, for the appellees (named defendant et al.).

*Eric Watt Wiechmann,* with whom were *Brian T. Foley* and, on the brief, *William H. Narwold,* for the appellees (defendant Stephen Perlmutter et al.).

SHEA, J. The issues in this appeal are whether a medical society and one of its physician members have standing to appeal from a declaratory ruling of the board of examiners in podiatry regarding the scope of podiatry practice in Connecticut. Holding that the plaintiffs had failed to allege sufficient grounds to establish aggrievement, the Superior Court rendered judgment dismissing the appeal. The plaintiffs are the Connecticut State Medical Society (medical society), a nonprofit organization of physicians in which membership is voluntary, and Enzo Sella, a physician member of the medical society specializing in orthopedics whose practice includes the diagnosis and treatment of medical problems of the ankle. The defendants are the board of examiners in podiatry (board), the commissioner of health services, and three podiatrists who had been parties to the declaratory ruling proceeding before the board. We find error in the conclusion of the court that the plaintiffs lack standing.

The complaint alleges that in January, 1984, the Connecticut General Life Insurance Company, a Medicare intermediary, issued a bulletin stating that, because the practice of podiatrists is limited to the diagnosis, prevention and treatment of foot ailments, Medicare would not pay for services provided by podiatrists involving problems of the ankle. In March, 1984, in response to the bulletin, the board requested the attorney general to issue a legal opinion on whether treatment of the ankle is within the scope of podiatry practice as defined by General Statutes § 20-50.[1] Indi-

[1] "[General Statutes] Sec. 20-5a. PODIATRY DEFINED. REQUIREMENTS FOR SURGERY. Podiatry is defined to be the diagnosis, prevention and treatment of foot ailments including the prescription, administering and dispens-

cating that resolution of that question would entail a factual determination regarding the relation between the foot and the ankle, the attorney general declined to issue the requested ruling.

Pursuant to General Statutes § 4-176,[2] the board subsequently held a hearing and then, on June 27, 1985, issued a declaratory ruling that, because "the ankle is part of the foot, and the foot is part of the ankle," the treatment of ankle problems is within the scope of podiatry practice in Connecticut. Claiming that the ruling was arbitrary and capricious, clearly erroneous, in excess of the statutory authority of the board, and made upon unlawful procedure in violation of constitutional

ing of drugs and controlled substances in schedules II, III, IV or V, in accordance with subsection (d) of section 21a-252, in connection therewith; the practice of surgery upon the feet, provided if an anesthetic other than a local anesthetic is required, such surgery shall be performed in a general hospital accredited by the Joint Commission on Accreditation of Hospitals by a licensed podiatrist who is accredited by the credentials committee of the medical staff of said hospital to perform podiatric surgery in conformance with rules promulgated by the chief of the surgical department of said hospital, taking into account the training, experience, demonstrated competence and judgment of each such licensed podiatrist, and such podiatrist shall comply with such rules; the dressing, padding and strapping of the feet; the making of models of the feet and the palliative and mechanical treatment of functional and structural ailments of the feet, not including the amputation of the leg, foot or toes or the treatment of systemic diseases other than local manifestations in the foot."

[2] "[General Statutes] Sec. 4-176. DECLARATORY RULINGS. Each agency may, in its discretion, issue declaratory rulings as to the applicability of any statutory provision or of any regulation or order of the agency, and each agency shall provide by regulation for the filing and prompt disposition of petitions seeking such rulings. If the agency issues an adverse ruling, the remedy for an aggrieved person shall be an action for declaratory judgment under section 4-175 unless the agency conducted a hearing pursuant to sections 4-177 and 4-178 for the purpose of finding facts as a basis for such ruling, in which case the remedy for an aggrieved person shall be an appeal pursuant to section 4-183. If the agency fails to exercise its discretion to issue such a ruling, such failure shall be deemed a sufficient request by the plaintiff for the purposes of section 4-175. Rulings disposing of petitions have the same status as agency decisions or orders in contested cases."

and statutory provisions, the plaintiffs appealed to the Superior Court pursuant to General Statutes § 4-183.[3] The defendants filed motions to dismiss, alleging that the plaintiffs were not aggrieved within the meaning of §§ 4-176 and 4-183, and that the court therefore lacked jurisdiction over the subject matter. The court granted the defendants' motions to dismiss in respect to both plaintiffs. From the judgment the plaintiffs have appealed.

I

We first address the issue of whether the motions to dismiss were properly granted in respect to the plaintiff physician, Enzo Sella. "A motion to dismiss properly attacks the jurisdiction of the court, essentially asserting that the plaintiff *cannot* as a matter of law and fact state a cause of action that should be heard by the court." (Emphasis in original.) *Baskin's Appeal from Probate,* 194 Conn. 635, 640, 484 A.2d 934 (1984).

---

[3] General Statutes § 4-183 provides in relevant part: "APPEAL TO SUPERIOR COURT. (a) A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case is entitled to judicial review by way of appeal under this chapter, provided, in case of conflict between this chapter and federal statutes or regulations relating to limitations of periods of time, procedures for filing appeals or jurisdiction or venue of any court or tribunal, such federal provisions shall prevail. A preliminary, procedural or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy.

\* \* \*

"(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

Unless Sella could establish that he was aggrieved, he had no standing to appeal. General Statutes §§ 4-176, 4-183; *Hughes* v. *Town Planning & Zoning Commission,* 156 Conn. 505, 508, 242 A.2d 705 (1968).

The complaint alleges that the declaratory ruling of the board "is likely to cause a substantial reduction in the quality of medical care rendered in Connecticut to persons suffering from problems of the ankle," and that the ruling "endangers the health of Connecticut residents who may rely on podiatrists for medical care of such problems . . . ." The complaint further states that Sella will suffer a loss of revenues because patients will seek treatment of ankle problems from podiatrists rather than physicians. The trial court held these grounds insufficient to establish Sella's aggrievement,[4] and also rejected the additional ground set forth in the plaintiffs' memorandum in opposition to the motions to dismiss, that, as a physician, Sella has a constitutionally protected property interest in the practice of medicine that "should confer standing and aggrievement for challenges of encroachment upon his professional interests."

" 'The fundamental test for determining aggrievement encompasses a well-settled twofold determination: first, "the party claiming aggrievement must successfully demonstrate a specific personal and legal

---

[4] The court attributed the general grounds concerning the quality of medical care in Connecticut only to the plaintiff medical society. Because we hold that the allegation of a loss of revenues resulting from allegedly illegal competition is sufficient to establish Sella's aggrievement, we need not consider the plaintiffs' claim that the specialized training of physicians such as Sella ought to confer upon them standing to challenge such perceived threats to the general quality of medical care. For the same reason, we do not pass upon the plaintiffs' assertion that "if physicians are not aggrieved by the Board's decision . . . then there is no person or party who can be recognized as being aggrieved, and the Board's decision is effectively immune from challenge." Cf. C. Wright, The Law of Federal Courts (4th Ed. 1983) § 13, p. 67.

interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision." . . .' " *Cannavo Enterprises, Inc.* v. *Burns,* 194 Conn. 43, 47, 478 A.2d 601 (1984); *Bakelaar* v. *West Haven,* 193 Conn. 59, 65, 475 A.2d 283 (1984). "Aggrievement is established if 'there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected.' *O'Leary* v. *McGuinness,* 140 Conn. 80, 83, 98 A.2d 660 (1953)." *Hall* v. *Planning Commission,* 181 Conn. 442, 445, 435 A.2d 975 (1980).

Neither the trial court nor the defendants have seriously challenged the notion that physicians such as Sella have a legally protected property interest in the practice of medicine. A licensed physician has a "right and estate in his profession" of which he cannot be deprived without due process of law. *Dent* v. *West Virginia,* 129 U.S. 114, 123, 9 S. Ct. 231, 32 L. Ed. 623 (1889). "The right of a physician to practice his profession is a property right, of which he cannot be arbitrarily deprived." *Butcher* v. *Maybury,* 8 F.2d 155, 158 (W.D. Wash. 1925). "Cases are legion holding, in one way or another, that the right of a licentiate to practice his profession is a property right, or a right in the nature of a property right, or a valuable franchise, or a valuable privilege." *Sloan* v. *Mitchell,* 113 W. Va. 506, 509–10, 168 S.E. 800 (1933); see also *Board of Regents of State Colleges* v. *Roth,* 408 U.S. 564, 576–78, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972); *Lee* v. *Board of Education,* 181 Conn. 69, 72, 434 A.2d 333 (1980); *Burden* v. *Hoover,* 9 Ill. 2d 114, 118, 137 N.E.2d 59 (1956). Thus, the first prong of the test for determining aggrievement, the existence

of a specific personal and legal interest in the subject matter of the decision, has been satisfied with respect to this plaintiff.

We next address the principal issue in this appeal, whether Sella's legal interest in the practice of medicine has been "specially and injuriously affected" by the declaratory ruling of the board. The trial court held that a loss of future revenues, as alleged on Sella's behalf, "is but a prospective and speculative injury, and therefore is insufficient to support a finding of aggrievement."

Ordinarily, an allegation that a governmental action will result in competition harmful to the complainant's business would not be sufficient to qualify the complainant as an aggrieved person. See *Gregorio* v. *Zoning Board of Appeals,* 155 Conn. 422, 426, 232 A.2d 330 (1967); *Whitney Theatre Co.* v. *Zoning Board of Appeals,* 150 Conn. 285, 288, 189 A.2d 396 (1963); *London* v. *Planning & Zoning Commission,* 149 Conn. 282, 284, 179 A.2d 614 (1962). The defendants cite as highly significant the recent decision of the United States Supreme Court in *Diamond* v. *Charles,* 476 U.S. 54, 106 S. Ct. 1697, 90 L. Ed. 2d 48 (1986), for the proposition that a speculative loss of revenue is insufficient to confer standing. *Diamond* involved an appeal by a physician from a ruling of the Court of Appeals for the Seventh Circuit affirming the granting of a permanent injunction against enforcement of several sections of the Illinois Abortion Law of 1975, as amended. Ill. Rev. Stat. c. 38, §§ 81-21 through 81-34 (1983). In support of his claim of standing, the physician, a pediatrician, alleged, inter alia, that, because enforcement of the abortion law would result in fewer abortions, the pool of potential fee-paying patients would be enlarged. *Diamond* v. *Charles,* supra, 66. The United States Supreme Court rejected this claim because "[t]he possibilities that such fetuses would survive and then find

their way as patients to Diamond are speculative, and 'unadorned speculation will not suffice to invoke the federal judicial power.' *Simon* v. *Eastern Kentucky Welfare Rights Org.,* [426 U.S. 26, 44, 96 S. Ct. 1917, 48 L. Ed. 2d 450 (1976)]." *Diamond* v. *Charles,* supra. We are not convinced, however, that these state and federal precedents control our disposition of the present case.[5]

It is a principle of common law that "[o]ne who causes loss of business or occupation to another merely by engaging in a business or occupation in good faith is not liable to the other for the loss so caused, though he knows that the loss will result." 3 Restatement, Torts § 708, p. 519. "It is only 'unfair' competition that is prohibited." 1 F. Harper & F. James, Jr., Torts (1956) § 6.13, p. 517. These substantive principles have engendered correlative jurisdictional rules. Although an allegation merely of competition likely to result in lost revenues is ordinarily insufficient to confer standing, this court has frequently assumed jurisdiction as a matter of course over claims of *unfair* or *illegal* competition. See *Shop-Rite Durable Supermarket, Inc.* v. *Mott's Shop Rite,* 173 Conn. 261, 265, 377 A.2d 312 (1977); *Yale Co-operative Corporation* v. *Rogin,* 133 Conn. 563, 571, 53 A.2d 383 (1947); *Middletown Trust Co.* v. *Middletown National Bank,* 110 Conn. 13, 20, 147 A. 22 (1929); *Skene* v. *Carayanis,* 103 Conn. 708, 714, 131 A. 497 (1926); cf. *Sportsmen's Boating Corporation* v. *Hensley,* 192 Conn. 747, 754–55, 474 A.2d 780 (1984).

Thus, it has been stated that "[w]hile we readily accept the premise that physicians . . . have 'no

---

[5] Because we find Sella to be "aggrieved" under the test enunciated in several of this court's decisions, which is set forth in the text of this opinion, we need not address the defendants' assertion that the federal test for standing is broader than our test for aggrievement. See *Nader* v. *Altermatt,* 166 Conn. 43, 51–52, 347 A.2d 89 (1974); cf. *Manchester Environmental Coalition* v. *Stockton,* 184 Conn. 51, 64 n.15, 441 A.2d 68 (1981).

legally recognized interest in being free from competition . . .' *ASI, Inc.* v. *Florida Public Service Commission,* 334 So. 2d 594, 596 (Fla. 1976), it by no means follows that the assertion of interest economic in nature can never furnish the basis for standing to challenge proposed or adopted agency rules." *Florida Medical Assn.* v. *Department of Professional Regulation,* 426 So. 2d 1112, 1115 (Fla. App. 1983). Accordingly, the court in *Florida Medical Assn.* distinguished the case before it, in which it had been contended that a proposed agency rule allowing optometrists to prescribe certain drugs would be illegal, from several other cases involving solely claims by competitors of harm to economic interests in which relief had been denied because of a lack of standing. "It must be borne in mind," said another court, "that it has always been held that a professional man has standing to prevent the *improper* invasion of his profession." (Emphasis added.) *Felix* v. *Wax,* 13 Pa. D. & C. 2d 600, 604 (1958); see also *Norville* v. *Mississippi State Medical Assn.,* 364 So. 2d 1084, 1090 (Miss. 1978); *Day* v. *Inland Empire Optical, Inc.,* 76 Wash. 2d 407, 416–17, 456 P.2d 1011 (1969); *Sloan* v. *Mitchell,* supra.

Because the plaintiff Sella has effectively alleged that his anticipated loss of revenues upon the ruling of the board would result from competition that is unfair or illegal, we conclude that Sella has standing to appeal that ruling. Although those paragraphs of the complaint that expressly attempt to establish the plaintiffs' aggrievement do not specifically mention unfair or illegal competition, such an allegation is necessarily implied from various remaining portions of the complaint. See *Lamb* v. *Burns,* 202 Conn. 158, 172, 520 A.2d 190 (1987); *Trichilo* v. *Trichilo,* 190 Conn. 774, 779, 462 A.2d 1048 (1983). The complaint alleges, for instance, that the board was without authority to expand the practice of podiatry, which "is expressly

limited by statute to diagnosis and treatment of 'foot' ailments and surgery upon the 'feet,' '' to include the treatment of ankle disorders. Elsewhere, the board's ruling is labeled ''illegal.'' In any event, the plaintiffs, in their memorandum in opposition to the motions to dismiss, expressly contended that the treatment of problems of the ankle by podiatrists ''amounts to the unlawful encroachment upon the right of such physicians to practice medicine.'' The prospect of unfair or illegal competition is therefore clearly at issue in the plaintiffs' appeal from the board's declaratory ruling. We hold that the trial court erred in finding that Sella was not aggrieved within the meaning of General Statutes §§ 4-176 and 4-183.

## II

The remaining issue is whether the motions to dismiss were nevertheless properly granted in respect to the plaintiff medical society. Our recent decision in *Connecticut Assn. of Health Care Facilities* v. *Worrell,* 199 Conn. 609, 508 A.2d 743 (1986), is dispositive. In *Worrell,* we adopted the federal standard for representational standing as delineated by the United States Supreme Court in *Hunt* v. *Washington State Apple Advertising Commission,* 432 U.S. 333, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977). '' '[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.' Id., 343.'' *Connecticut Assn. of Health Care Facilities* v. *Worrell,* supra, 616.

The plaintiff medical society satisfies the three prerequisites for representational standing as set forth in *Hunt* and *Worrell.* It has been established in the first

part of this opinion that Sella, a physician member of the society, has standing in his own right to bring an action against the defendants. The stated organizational purposes of the medical society, as set forth in its bylaws, include the extension of medical knowledge and the promotion of high quality medical care that benefits the public in the care and prevention of disease. This medical society's lawsuit is germane to these purposes because an expansion of podiatry practice, if unwarranted, threatens to erode the level of medical care available to the public. Finally, neither the claim asserted nor the relief requested requires the participation of individual members of the medical society. "Because money damages are not sought for alleged injuries to the individual members, proof relating solely to the variant experiences of each [physician] resulting from the [board's declaratory ruling] will not be necessary."

There is error, the judgment granting the defendants' motions to dismiss in respect to both plaintiffs is set aside and the case is remanded for further proceedings.

In this opinion the other justices concurred.