[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 9000
This is an appeal under section 4-183(j) of the General Statutes from the denial of a certificate of need by the Commission on Hospitals and Health Care (hereafter "CHHC" or the "Commission"). The plaintiff, Marriott Retirement Communities, Inc., applied to the Commission to construct a long term care facility, which required review pursuant to sections 19a-153, 19a-154 and 19a-155 of the General Statutes. Approval of the CHHC was required to allow the plaintiff to include the proposed 60 bed long term care facility (nursing home) in the Town of Danbury as part of a full service retirement community proposed by the plaintiff. This project would also include 246 independent living units and 40 assisted living units. The 60 bed nursing home component of the project was proposed for residents who may need more intensive assistance and nursing care. When reviewing an application for a certificate of need, the Commission is required by statute to consider several factors including the need for an additional facility or service in the area to be served. Section 19a-154(a) of the General Statutes. The Commission's standard certificate of need application includes a section for information on the need for proposed beds entitled "Subset For All Proposals Involving Additional and/or Replacement Long Term Care Beds," which the parties have designated the Commission's Bed Need Methodology (hereafter "BNM"). The data supplied under this portion of the certificate of need application is used by the Commission to determine bed need in the town in which the facility is to be located, in this case the City of Danbury, and in the general area, including contiguous towns. The Commission claims that the BNM is merely a guideline or tool used in evaluating compliance with the statutory factors, while the plaintiff claims that it is an administrative regulation not properly promulgated by the CHHC as required by the Uniform Administrative Procedures Act ("UAPA").
On July 10, 1990, the CHHC denied the plaintiff's application on the ground that it did not demonstrate a need for 60 nursing home beds in Danbury, concluding that there was a surplus of 202 beds which would increase to 262 beds if the application were approved. In arriving at this calculation, the Commission employed the BNM, although the parties dispute the extent to which this controlled the decision. The plaintiff considered towns contiguous to Danbury as part of the plaintiff's primary service area, claiming a need for at least CT Page 9001 68 nursing home beds in the service area. The Commission claims that it rejected the application after consideration of several factors and not just the BNM, and that it evaluated all of the evidence to determine compliance with the statutory factors. The plaintiff appealed from denial of the application under section 4-183(j) of the General Statutes.
The plaintiff basically makes two claims in this appeal: (1) the Commission's decision was incorrect based upon the evidence presented to it since it should have issued a certificate of need based upon considering not only the demand for nursing home beds in Danbury, but also surrounding towns in the plaintiff's service area; and (2) the Bed Need Methodology amounted to an illegal regulation used to deny the application.
The plaintiff in an administrative appeal must prove aggrievement by a final decision of the administrative agency. Section 4-183(a) of the General Statutes; State Medical Society v. Board of Examiners in Podiatry, 203 Conn. 295, 299; Connecticut Business Industry Assn., Inc. v. CHHC, 214 Conn. 726,729. "Pleading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of the appeal." Bakelaar v. West Haven,193 Conn. 59, 65; Light Rigging Co. v. Department of Public Utility Control, 219 Conn. 168, 172. The fact that the plaintiff was a party or participated before the agency is insufficient by itself to prove aggrievement. Milford v. Local 1566, 200 Conn. 91,96; Bakelaar v. West Haven, supra, 66; Hartford Distributors, Inc. v. Liquor Control Commission, 177 Conn. 616,620.
"`The fundamental test for determining aggrievement encompasses a well settled twofold determination: first, `the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that the specific personal and legal interest has been specially and injuriously affected by the decision.' . . ." Light Rigging Co. v. Department of Public Utility Control, supra, 173; State Medical Society v. Board of Examiners in Podiatry, supra, 299, 300. "`Aggrievement is established if `there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been CT Page 9002 adversely affected.'" Light Rigging Co. v. Department of Public Utility Control, supra, 173.
The plaintiff was the applicant to the defendant agency and has a significant financial investment in the project. The total project cost was projected in 1990 at $49,000,000, with $3,900,000 allocated to the certificate of need application for the nursing home component. If the project is developed, the plaintiff would recoup its investment and make a profit. There was an anticipated $620,000 profit from the nursing home component. The application has been expensive, and the denial of it has resulted in financial loss to the plaintiff. The two part test for aggrievement has been met. Anticipated loss of revenues resulting from the ruling of an administrative agency can constitute aggrievement. State Medical Society v. Board of Examiners in Podiatry, supra, 303.
In reviewing an appeal from a decision of an administrative agency under section 4-183(j)(5), the court can reverse or modify the agency's decision if substantial rights of the applicant have been prejudiced because the administrative findings, inferences, conclusions or decisions are clearly erroneous in view of the reliable, probative and substantial evidence on the whole record. A review of the record in this case shows that the Commission considered the evidence presented and reasonably applied it to the statutory factors in reaching its conclusion. On review, the court must apply the substantial evidence rule on the factual questions presented and determine whether the ultimate findings were supported by substantial evidence. Persico v. Maher, 191 Conn. 384,409. Extensive discussion of this point is unnecessary since the court agrees with the plaintiff that the Bed Need Methodology guideline of the Commission amounts to a regulation which should not have been applied to the plaintiff's application. While the trial court must defer to factual conclusions of the agency, the court does not defer to an incorrect decision by the agency on a point of law. Board of Education v. Freedom of Information Commission, 217 Conn. 153,159; Connecticut Hospital Assn. v. Commission on Hospitals 
Health Care, 200 Conn. 133, 140.
For purposes of the UAPA, a regulation is defined in section 4-166(13) of the Connecticut General Statutes as follows:
CT Page 9003 "[E]ach agency statement of general applicability, without regard to its designation, that implements, interprets or prescribes law or policy, or describes the organization, procedure, or practice requirements of any agency. The term includes the amendment or repeal of a prior regulation, but does not include (A) statements concerning only the internal management of any agency and not affecting private rights or procedures available to the public, (B) declaratory rulings issued pursuant to section 4-176
or (C) intra-agency or interagency memoranda."
In deciding whether a rule, policy or guideline is a "regulation," the test is whether it has a substantial impact on the rights and obligations of parties when they appear before the agency in the future. Salmon Brook Convalescent Home v. Comm. on Hosp. Health Care, 177 Conn. 356, 362; Maloney v. Pac, 183 Conn. 313, 326; Walker v. Commissioner,187 Conn. 458, 462; Persico v. Maher, supra, 401. However, not every administrative decision which may have some significance in other cases beyond the one before the agency amounts to a regulation. Eagle Hill Corporation v. Commission on Hospitals Health Care, 2 Conn. App. 68, 76. The Commission claims that the BNM is merely a guideline which, while generally used by the Commission, is not determinative of an application for certificate of need. It claims that the BNM was only a tool for evaluating information and that using it was not determinative of the outcome in this or other cases. Nevertheless, it concedes that the information in the BNM is critical to the Commission's evaluation of the project under the statutory factors and that it is routinely used for that purpose. The record shows that the Commission routinely uses the BNM in evaluating projects similar to the plaintiff's, and that it is a significant part of all applications for similar uses. The plaintiff has shown on the record numerous cases where the BNM was used by the Commission and determined the outcome of an application. Even though the Commission may be able to identify one or two cases where an application was granted despite failure to strictly comply with the BNM, in this case and in others an application was rejected which otherwise met the Commission's regulations and applicable statutes because the Commission determined that there was no need for the project, relying in part on the BNM. The BNM prescribes what data is to be analyzed, how it is to be analyzed, and it is used as a guideline, and often a CT Page 9004 controlling factor, in determining need for the service or project within the area to be served. Public need for the project in the area is a material factor in sections 19a-153 and 19a-154. The BNM can be considered an "agency statement of general applicability, without regard to its designation, that implements, interprets or prescribes law or policy, or describes the . . . procedure, or practice requirements" of the agency. Section 4-166(13) of the General Statutes.
The situation here is similar to Salmon Brook Convalescent Home v. Comm. on Hosp. Health Care, supra, 363, where the court noted that the use of "guidelines" by the CHHC determined rights and obligations of the plaintiff and others in the past and will have a substantial impact on the rights and obligations of those who appear before it in the future. There "[t]he Commission decided to formulate `guidelines' against which they evaluated applications by those subject to their regulatory powers. Decisions utilizing the `guidelines' were consistently made by the commission. This was admittedly done without following the UAPA." Id. While a regulation must be a rule of sufficient generality to impinge substantially on others who will deal with the agency at a future time, Persico v. Maher, supra, 401; Maloney v. Pac, supra, 326, the inclusion of the BNM in the standard application form and the Commission's past track record arguably meets this test.
The fact that the BNM has not determined the outcome in all cases is immaterial. Many administrative applications require compliance with and evaluation under numerous guidelines for regulations, some of which may be somewhat conflicting, and the application is evaluated by all the factors considered together, so that no one factor is necessarily controlling.
Even though the agency does not consider the BNM as a "regulation" but designates it as a "methodology," "tool" or "guideline" rather than a regulation, that is also not controlling. Walker v. Commissioner, supra, 462; Salmon Brook Convalescent Home v. Comm. on Hosp. Health Care, supra, 362. A "regulation" is a regulation by whatever designation it is called. Persico v. Maher, supra, 401. The test is whether in fact the guideline, tool, or whatever the Commission calls it will have a substantial impact on the rights and obligations of parties who may appear before the Commission in the future. Id., and cases cited therein. CT Page 9005
There was evidence in the record that the BNM was applied as a substantive rule and had a material effect upon the plaintiff's application, and that it will be used and affect future applications of others. The Commission concedes that the BNM was not promulgated as a regulation under the UAPA. See section 4-163 et seq. Where a regulation is used by an agency without being adopted as required by statute, it is invalid and cannot be used to support an agency decision. Walker v. Commissioner, supra, 464; Salmon Brook Convalescent Home v. Comm. on Hosp. Health Care, supra, 368; Persico v. Maher, supra, 405. The Commission's decision is set aside pursuant to subsections (2), (3) and (4) of section 4-183(j) of the General Statutes.
Although the defendant improperly considered and applied the BNM in denying the application, the court cannot conclude from the record that an approval was required under the facts of this case if only properly adopted standards were used in evaluating the application. Further review is required by the agency.
The appeal is sustained and remanded to the defendant for further proceedings. Section 4-183(j) and (k) of the General Statutes.
ROBERT A. FULLER, JUDGE