[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This administrative appeal is brought by a present holder of a cable television franchise asserting that the Department of Public Utility Control ("DPUC") unlawfully approved a certificate for a franchise to another company to compete in the same geographical area.
The appellant is United Television Services Corporation, d/b/a TIC Cablevision of Central Connecticut ("TCI"), which currently provides cable television services to the area of the state designated as Area No. 10, which includes Hartford, Bloomfield, East and West Hartford, Simsbury and Windsor.
Procedural History
On July 8, 1993, appellee The FiberVision Corporation of Greater Hartford ("FiberVision") filed an application with the DPUC to issue a certificate for a franchise for cable television services in Area No. 10. TCI intervened in the application proceedings, in which the appellee Office of Consumer Counsel was also a party pursuant to General Statutes § 16-2a, along with the Attorney General of the State of Connecticut.
The DPUC conducted public hearings on FiberVision's application on September 20, October 7, 8 and 18, 1993. On January 20, 1994, the DPUC distributed a draft decision. After providing parties and interveners an opportunity to be heard, the DPUC issued a final decision on February 16, 1994, granting FiberVision's application for a certificate of public convenience and necessity for a franchise to operate. in Area No. 10.
The DPUC imposed the following terms and conditions for the franchise:
— The franchise agreement must include a description of the cable system with fiber nodes serving 500 homes with a channel capacity of 78. Construction is to begin within six months of the franchise award with service available CT Page 8833 three months after construction begins.
— The customer services must include a commitment to satisfy requests for installation on the same day if possible but within three days at maximum, and rates charged for programming and services must be "competitive."
— The franchise must include a commitment to fund public access at the rate of $2.00 per subscriber per year for the first 30,000 subscribers and $3.00 per subscriber per year for additional subscribers. The franchise must contribute $2,000 per year to help support the Advisory Counsel for its area. It must negotiate a public access agreement with CACT as well as specific agreements with media centers and educational institutions.
— FiberVision shall, within 90 days, file evidence that financing has been committed and that ownership, corporate and Board structures have been formalized prior to commencing construction.
— FiberVision shall, within 90 days, finance a needs assessment.
— FiberVision must begin construction of its energized trunk and feeder lines within six months and construct not fewer than 150 miles of energized trunks and feeders per year for each of the first three years of the franchise. It must complete construction of its entire system within twelve years.
TCI, which currently operates a franchise in the same area in which FiberVision has been authorized to operate, filed this administrative appeal asserting a number of grounds which fall into four categories: 1) claims that the DPUC granted the application without sufficient evidence that the applicant satisfied the criteria imposed in General Statutes § 16-331(b); 2) claims that the terms and conditions imposed on FiberVision are more favorable than those imposed on TCI, in violation of General Statutes § 16-331(i); 3) claims that the DPUC failed to require prior compliance with § 16-331(h), which requires an applicant to perform a needs assessment; 4) claims of unlawful procedure in the hearing of the application. CT Page 8834
Aggrievement
The threshold dispute in this appeal is whether TCI is an aggrieved party with respect to any or all of the four categories' of objections identified above. It is well established that the right to appeal from an administrative action is created only by statute and that a party must exercise that right in accordance with the statute in order for courts to have jurisdiction. Munhallv. Inland Wetlands Commission, 221 Conn. 46, 50, 602 A.2d 566
(1992); Charles Holdings, Ltd. v. Planning Zoning Board ofAppeals, 208 Conn. 476, 479, 544 A.2d 633 (1988). Appeal from an administrative decision of the DPUC is pursuant to the Uniform Administrative Procedure Act (UAPA) General Statutes §§ 4-166
through 4-189. Connecticut Light Power Co. v. DPUC, 219 Conn. 51,57 (1991).
The UAPA, at General Statutes § 4-183(a), authorizes an appeal to the superior court by a "person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision . . ."
Pleading and proof of aggrievement are prerequisites to a trial court's jurisdiction over the subject matter of an administrative appeal. Light Rigging Co. v. DPUC, 219 Conn. 168,172, 592 A.2d 386 (1991); Bakelaar v. West Haven, 193 Conn. 59, 65,475 A.2d 283 (1984); Beckish v. Manafort, 175 Conn. 415, 419,399 A.2d 1274 (1978).
As the Connecticut Supreme Court has repeatedly stated, the test for determining aggrievement is a two part inquiry: "[F]irst, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decisions, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision . . ." New EnglandRehabilitation Hospital of Hartford, Inc. v. CHHC, 226 Conn. 105,121 (1993); Cannavo Enterprises, Inc. v. Burns, 194 Conn. 43, 47,478 A.2d 601 (1984); State Medical Society v. Board of Examiners inPodiatry, 203 Conn. 295, 299-300, 524 A.2d 636 (1987); Bakelaar v.West Haven, 193 Conn. 59, 65, 475 A.2d 283 (1984).
A party claiming aggrievement as to an administrative decision directed to another person or entity must establish "the certainty CT Page 8835 of a specific personal and legal interest in the subject matter of the decision . . ." (Internal quotation marks omitted.) New EnglandRehabilitation Hospital v. CHHC, 226 Conn. 122-23; CannavoEnterprises, Inc. v. Burns, 194 Conn. 47.
The appellant asserts that it is the existing franchise holder in Area No. 10. At page 5 of its brief, the appellant conclusorily states that its "present business operations are adversely affected by the DPUC granting a competing franchise to Fiber Vision."
At oral argument as to the appeal, the appellant was given an opportunity to present evidence on the issue of aggrievement. It presented no testimony, affidavits, or other evidence but indicated that the "protected part of the record gives projections on impact" without specifically referring the court to any particular document or testimony within the portion of the administrative record placed under seal. It appears that TCI's position is that the addition of a competitor in Area No. 10 will be likely to diminish TCI's market share and the value of its franchise and otherwise have the effects that usually result from the addition of a second provider of services into an area in which there has been only one provider.
The court finds that the appellant satisfies the first requirement for aggrievement, that is, its status as a franchise holder in the area to which the contested franchise applies indicates that TCI has a specific personal and legal interest distinguished from a general interest. The court must, however, determine whether TCI satisfies the second requirement for aggrievement, that is, that its interest has been cognizably injuriously affected by the administrative decision.
It appears that pursuant to the Supreme Court's analysis inNew England Rehabilitation Hospital, 226 Conn. 137, there are two situations in which a party may establish aggrievement as to administrative actions relating to a competitor.
A claim of injury that is, in essence, a claim that a government action will result in competition harmful to the complainant's business is not sufficient to qualify the complainant as an aggrieved person. State Medical Society v. Board ofExaminers in Podiatry, 203 Conn. 295, 301 (1987); Gregorio v.Zoning Board of Appeals, 155 Conn. 422, 426, 232 A.2d 330 (1967);Whitney Theatre Co. v. Zoning Board of Appeals, 150 Conn. 285, 288,189 A.2d 396 (1963). If, however, the complainant alleges that the competition is unfair or illegal, an injury resulting from such CT Page 8836 competition may satisfy the second requirement for aggrievement by identifying a cognizable injury. State Medical Society v. Board ofExaminers in Podiatry, 203 Conn. 303. The illegality or unfairness recognized as rendering a competitor legally aggrieved is not, however, a claim of procedural deficiencies in the proceeding by which the competitor gained the administrative ruling at issue but rather a substantive illegality. In State Medical Society, supra, the illegality was the statutory limitation on the authority of the podiatry board to expand its own area of regulation, such that the competitors had been granted leave to practice in an area which the granting agency was not authorized to permit.
The other circumstance in which a claim of aggrievement based on the effects of competition is sufficient to support jurisdiction is where a statute specifically imposes on the administrative agency a duty to consider the interests of existing franchisees. See Light Rigging Co. v. DPUC, 219 Conn. 168 (1991). In LightRigging, the holder of a DPUC certificate to transport goods intrastate appealed from the agency's granting of a certificate to another carrier to provide similar services. The Supreme Court held that the existing holder of a certificate had satisfied the second requirement for showing aggrievement because General Statutes § 16-286 requires the DPUC to consider "the existing motor transportation facilities and the effect upon them of granting such a certificate, [and] the public need for the service the applicant proposes to render." In Light Rigging, the Court specifically distinguished the situation presented from other situations involving claims generally based on the effects of competition, in which illegal or unfair competition had to be alleged, noting that the statutory requirement of § 16-286 was "[u]nlike the statutory requirement for a physician's license," (a reference to StateMedical Society) which contained no such explicit requirement that the licensing agency consider the effects in competition. The Court made it clear, however, that it was not adopting a new, broad standard for aggrievement of competitors but was merely applying "this particular statutory administrative scheme;" Light Rigging,219 Conn. 177, which required a consideration of the issues of public need and effects on the existing franchisee.
In New England Rehabilitation Hospital of Hartford, Inc. v.CHAC, 226 Conn. 125-127, the Supreme Court noted that the Connecticut Commission on Hospitals and Health Care was not subject to a specific statutory requirement to consider the impact of an application on existing health care facilities, and found that the appellant competitor had therefore not alleged a legally protected CT Page 8837 interest.
Contrary to TCI's urging, the Supreme Court did not adopt the standard of General Statutes § 16-286, the statute at issue in LightRigging, as a general standard of aggrievement for competitors. Rather, the Court in New England Rehabilitation Hospital concluded that the scope of aggrievement may include competitors to theextent specified in the statute governing the agency's inquiry.Id.
The statute defining the standards for the decisions of the DPUC with regard to applications for cable television franchises is General Statutes § 16-331. The only provision of that statute which requires consideration of existing franchisees is subsection (i):
 Each certificate of public convenience and necessity for a franchise issued pursuant to this section shall be nonexclusive and each such certificate issued for a franchise in any area of the state where an existing franchise is currently operating shall not contain more favorable terms or conditions than those imposed on the existing franchise. This subsection shall not apply to the length of the term of such certification and may be determined pursuant to subsection (d) of this section. [emphasis supplied]
Because the above provision requires the DPUC not to grant more favorable terms to a new franchisee in the same area the analysis of Light Rigging applies, and TCI has a cognizable interest in raising the claimed failure of the DPUC to comply with § 16-331(i).
TCI is not correct, however, in its further argument that it has standing to appeal as to issues outside the ambit of § 16-331(i). Nothing in the discussions of aggrievement in eitherLight Rigging or New England Rehabilitation Hospital suggests that where a regulatory statute creates standing as to enumerated issues, a competitor acquires standing to raise issues outside those to which the express language of the statute recognizes an interest of a competitor. It is very clear from the Court's discussion of aggrievement in New England RehabilitationHospital, 226 Conn. 124-25, that the scope of aggrievement is no broader than the scope of recognition to a competitor's interest CT Page 8838 in a regulatory statute. The Supreme Court has recognized, as to other types of administrative appeals, that aggrievement may be limited to particular issues. See Red Hill Coalition, Inc. v.Town Plan Zoning Commission, 212 Conn. 727, 734, 563 A.2d 1339
(1989); Mystic Marinelife Aquarium Inc. v. Gill, 175 Conn. 483,490, 400 A.2d 726 (1978).
This court finds that, as to the four types of claims enumerated at page 3 above, TCI is aggrieved only as to the second category, that is, its claims that the terms and conditions imposed on FiberVision are more favorable than those imposed on itself. Since § 16-331(i) explicitly exempts the length of the certificate from any claim of more favorable terms, however, TCI cannot be held to be aggrieved as to that feature of the certificate of need granted to FiberVision.
As to all of its other claims, TCI has failed to show that the decision injuriously affects its specific personal and legal interest, the second requirement for aggrievement identified for by the Supreme Court. This court finds that TCI has not established aggrievement as to the issues raised at paragraphs 18, 19, 20, 21 and 22 of its appeal, nor as to that portion of paragraph 17 that invokes § 16-331(h).
TCI has established aggrievement only as to its claim that the certificate issued to FiberVision is upon terms and conditions more favorable than those imposed on TCI.
Claim of More Favorable Terms And Conditions
TCI has enumerated several respects in which it claims the conditions imposed on FiberVision are more favorable than those imposed as to its own franchise for Area No. 10. TCI argues, in essence, that the DPUC violated § 16-333(i) if any one of the terms imposed on the new entrant was more favorable than the requirement on the same issue imposed upon TCI at the time it obtained its own certificate. It is by no means clear, however, that the proper approach to the requirements of § 16-331(i), which the parties have dubbed a "level playing field" provision, is a detail-by-detail approach rather than a comparison of the entire package of terms and conditions imposed on the existing and the new franchisee to determine whether, as a whole, the terms and conditions are more favorable.
The illogicality of an item-by-item approach is clear when the CT Page 8839 court considers that TCI, or, rather, its predecessor in interest, was granted its franchise in 1967. If it were required to achieve point-by-point equality in terms and conditions, the DPUC would be put in the position of imposing particular requirements on a new entrant not because of any real need but simply to match the situation that existed at the time of the application of the existing entrant, without regard to new information, new technology, or other temporal developments. Indeed, in its discussion of the requirements of § 16-331(i) in its reply brief addressed to the DPUC on November 10, 1993, TCI acknowledged that "[i]n reality, the Department has very little room to replicate prior conditions and/or insure a level playing field." (Brief of TCI, 11/15/93 at page 24) and suggested that FiberVision should agree to some kind of rate regulation until such time as it and TCI become subject to a provision of federal law, 47 U.S.C. § 543(a)(2), that it asserts will release both providers from rate regulation upon a finding that "effective competition" exists in Area No. 10.
Even if a condition-by-condition comparison of the TCI certificate and the FiberVision certificate were the proper undertaking for a court reviewing the DPUC's adherence to § 16-331(i), such a comparison is not possible upon the record provided by TCI. General Statutes § 16-331(i) requires comparison of the conditions contained in the certificate for franchise granted to the new entrant with those imposed on the existing cable provider. Such a comparison is impossible without the text of the conditions imposed on TCI (or its predecessor) as to its franchise. TCI has supplied, as Appendix 10, an application for approval by the DPUC of its business reorganization. This application is accompanied by a list of improvements which the applicant agreed to provide in both the Hartford and Plainville/New Britain areas, apparently in return for the agreement of the Attorney General and the Office of Consumer Counsel not to oppose the proposed change in ownership. The application was approved by the DPUC. This document does not, however, appear to provide the basis for comparison relevant to § 16-331(i), as it is not a description of the "terms and conditions . . . imposed on the existing franchise" in connection with the issuance of a certificate for a franchise but is, rather, a description of stipulated enhancements offered in connection with an application for approval of the franchisee's business reorganization. As such, it does not provide this court with the ability to compare the franchise conditions imposed by the DPUC as to TCI with those imposed by the DPUC as to FiberVision.
In the three pages of its appeal brief addressed to the claim CT Page 8840 of more favorable terms afforded to FiberVision, TCI claims that the DPUC allowed FiberVision a lower rate of contribution to supporting public access by limiting its contribution to $2.00 per customer per year for its first 30,000 subscribers and $3.00 per year for each additional subscriber. Even if an item-by-item comparison were appropriate, the appellant has not provided a record that would allow this court to determine whether the per subscriber contribution to public access imposed on FiberVision is lesser than the per-subscriber contribution imposed upon TCI. Appendix 10, at page 3, reveals that TCI agreed to maximum expenditures for public access for each of the years between 1990 and 1994 in the amount of $150,000 for the Hartford franchise areas. TCI has not represented that it has fewer than 60,000 subscribers, the number that would lead to a contribution of $150,000 at the rate of contribution imposed on FiberVision, and this court therefore has no basis for concluding whether the per-subscriber contribution required of FiberVision is more — or less — favorable than that imposed on TCI, even assuming that the November 10, 1988 agreement constitutes an imposition of conditions by the DPUC, and even assuming that point-by-point, rather than global comparison of terms and conditions is required.
Failure of TCI To Provide A Record Sufficient For Review Of ClaimsInvoking § 16-331(i)
TCI's allegations that the DPUC issued a certificate with more favorable terms and conditions to FiberVision than it issued to TCI are set forth in paragraphs 15 and 17 of its appeal, in which TCI lists each respect in which it claims the terms afforded FiberVision are more favorable. The DPUC has denied the allegations of these paragraphs.
The terms and conditions imposed upon FiberVision are contained in the decision by the DPUC granting FiberVision's application. In order to review the claim that these terms and conditions are more favorable than those imposed on TCI, it is necessary for this court to compare the two sets of terms and conditions. The terms and conditions imposed in the certificate granted to TCI are not contained in the record.
TCI correctly asserts that the DPUC had access to the certificate that it had issued to TCI's predecessor and was required not to afford more favorable terms and conditions upon issuing a certificate for the same region to FiberVision. In order to determine whether the DPUC failed to comply with this statutory CT Page 8841 requirement, this court must determine whether the DPUC's conclusion that it was complying with § 16-331(i) is sufficiently supported by the record. Feinson v. Conservation Commission,180 Conn. 421, 425, 428 A.2d 910 (1980). Since the DPUC has denied the claim that it imposed more favorable terms as to the FiberVision certificate, it was TCI's burden to provide a record sufficient to enable this court to review its claim. As to other grounds for administrative appeals based on material outside the documentary record, the Connecticut Supreme Court had held that the appellant has the duty of producing the evidentiary record necessary for a court to decide its claims:
 Because public officers, acting in their official capacities, are presumed, until the contrary appears, to have acted legally and properly; Brookfield v. Candlewood Shores Estate, Inc., 201 Conn. 1, 7, 513 A.2d 1218
(1986); Balch Pontiac-Buick, Inc. v. Commissioner of Motor Vehicles, 165 Conn. 559, 568, 345 A.2d 520 (1973); Hills v. Zoning Commission, 139 Conn. 603, 608, 96 A.2d 212
(1953); the burden on such a claim rests on the person asserting it. See. e.g., Obeda v. Board of Selectmen [180 Conn. 521, 429 A.2d 956 (1980)]; Whittaker v. Zoning Board of Appeals, 179 Conn. 650, 654, 427 A.2d 1346
(1980).
Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525, 537,525 A.2d 940 (1987).
It is an appellant's burden to prove that an administrative agency departed from the standards that govern its rulings.Concerned Citizens of Sterling, Inc. v. Connecticut Siting Council,215 Conn. 474, 489, 576 A.2d 510 (1990).
At oral argument, TCI conceded that the terms and conditions of the certificate which its predecessor was issued are not contained in the record. When invited by this court to produce any evidence to support its claim that the terms imposed on FiberVision were more favorable, TCI, through counsel, declined to supplement the record with the documents which would have allowed this court to make a comparison. TCI has likewise not presented any stipulation, agreed to by an authorized agent of the DPUC, establishing what terms and conditions were imposed as to its own CT Page 8842 franchise.
Instead, TCI relies on its conclusory statements that certain features of the terms imposed on FiberVision are more favorable, without furnishing the court with any basis for comparison, either on a condition-by-condition basis, or by a more global analysis of terms and conditions imposed on the two applicants.
TCI has supplemented the record with applications of other applicants for franchises in other areas of the state. Such comparisons are irrelevant: § 16-331(i) imposes a duty on the DPUC not to impose more favorable terms on a re-entrant than on an existing franchisee in the same area. Accordingly, only the terms and conditions imposed on TCI and its predecessor as to the franchise for Area No. 10 are relevant, and they have not been supplied to this court.
Because TCI has not supplied the court with a record sufficient to allow review of the only claims as to which TCI is aggrieved, those claims are dismissed.
Conclusion
 1. TCI has abandoned its claim, set forth in paragraph 16 of its appeal, that the procedures followed by the DPUC to protect certain FiberVision material from public disclosure were unlawful. (See Brief of Appellant, June 3, 1994, page 2, n. 2).
2. This court finds that the appellant is not aggrieved as to any of the other issues raised except those that claim violations of General Statutes § 16-331(i).
3. The appellant's claims of violation of General Statutes § 16-331(i) are dismissed for failure to present a record sufficient for their review.
The appeal is dismissed.
Beverly J. Hodgson Judge of the Superior Court CT Page 8843