STANLEY J. PAC, COMMISSIONER OF ENVIRONMENTAL PROTECTION *v.* THE UPJOHN COMPANY (7883)

BORDEN, SPALLONE and DALY, Js.

Argued December 15, 1989—decision released March 20, 1990

*S. Robert Jelley,* with whom was *Matthew C. Brenneman,* for the appellant (defendant).

*Richard F. Webb,* assistant attorney general, with whom, on the brief, was *Clarine Nardi Riddle,* attorney general, and *Robert E. Walsh,* assistant attorney general, for the appellee (plaintiff).

BORDEN, J. The defendant, The Upjohn Company (Upjohn), appeals from the judgment of the trial court accepting an attorney trial referee's recommendation that Upjohn pay a civil penalty to the plaintiff, the commissioner of environmental protection, for discharging wastewater containing effluents in excess of certain levels. Those levels were established in a March, 1983 order[1] by the commissioner to Upjohn. Upjohn claims that the court erred because (1) the effluent parameters set forth in the commission's order were meant to serve as goals or estimates, and not as enforceable

---

[1] Throughout this opinion, "order" refers to an order to abate pollution issued pursuant to General Statutes § 22a-431, and "permit" refers to a permit for a new discharge issued pursuant to General Statutes § 22a-430.

effluent limitations, and (2) General Statutes § 22a-438, the forfeiture provision in Connecticut's Water Pollution Control Act (CWPCA), does not apply to violations of orders to abate pollution issued pursuant to General Statutes § 22a-431. We find no error.

Certain facts are not in dispute. Upjohn operates a batch chemical plant in North Haven that produces specialty organic chemicals. As part of its manufacturing process, this plant discharges approximately 570,000 gallons of treated process wastewater daily into the Quinnipiac River. During February, March and April, 1985, Upjohn's wastewater discharge contained concentrations of various pollutants in excess of the monthly average parameters contained in the March, 1983 order issued by the commissioner.

The March, 1983 order, issued pursuant to § 22a-431, was a modification of a previous order issued in November, 1981. The 1981 order was also issued pursuant to § 22a-431, since Upjohn could not be issued a state National Pollutant Discharge Elimination System (NPDES) discharge permit pursuant to § 22a-430 because its discharge existed prior to May 1, 1967. The 1981 order, issued by the commissioner based on the defendant's June 4, 1979 application for a federal discharge permit, contained NPDES permit number CT0001314. This permit contained within the order was issued pursuant to General Statutes § 22a-424 (k), which authorizes the commissioner to "exercise all incidental powers necessary to carry out the purposes of this chapter and the Federal Water Pollution Control Act."[2]

---

[2] Upjohn claims that the commissioner is now for the first time asserting that the March, 1983 order was issued pursuant to § 22a-424 (k), and not § 22a-431, in contravention of the finding made by the referee. It asserts that under § 22a-431, the commissioner is not authorized to include a permit within an order issued thereunder. This is incorrect. It was the November, 1981 order that contained the permit; the March, 1983 order modified

The commissioner brought this action against Upjohn seeking, inter alia, a forfeiture pursuant to General Statutes § 22a-438. The trial court referred the case to an attorney trial referee. The referee, finding that Upjohn discharged pollutants in excess of effluent limitations imposed by the commissioner, recommended a civil penalty of $135,000. Both parties subsequently filed exceptions to the referee's report under Practice Book § 439. The trial court, *Allen, J.,* supplemented the referee's report by adding four factual admissions, two by each party. Thereafter, the trial court, *M. Hennessey, J.,* accepted the referee's report as supplemented by the findings made by Judge Allen. This appeal followed.

I

Upjohn first claims that the trial court erred by accepting the referee's determination that the limits contained in the March, 1983 order established enforceable effluent limitations. This claim is in two parts. First, it argues that the referee's determination was based on an erroneous interpretation of the 1972 amendments to the Federal Water Pollution Control Act (FWPCA),[3] and the CWPCA, General Statutes § 22a-416 et seq. Second, it claims that this determination was legally and logically inconsistent with the facts found. We disagree.

that prior order. In any event, the defendant is precluded from raising the validity of its NPDES permit in an enforcement proceeding. See *Connecticut Fund for the Environment, Inc.* v. *Job Plating Co.,* 623 F. Sup. 207, 216–17 (D. Conn. 1985).

[3] The FWPCA Amendments of 1972, § 101 et seq., as amended; 33 U.S.C. § 1251 et seq.; established the National Pollutant Discharge Elimination System (NPDES), a system that makes it unlawful to discharge pollutants into navigable waters unless a permit is obtained and its terms are complied with. 33 U.S.C. § 1311 (a); *Environmental Protection Agency* v. *State Water Resources Control Board,* 426 U.S. 200, 205, 96 S. Ct. 2022, 48 L. Ed. 2d 578 (1976); *Mianus River Preservation Committee* v. *Administrator, Environmental Protection Agency,* 541 F.2d 899, 901 (2d Cir. 1976).

## A

Upjohn claims that the referee misconstrued the Connecticut statutory scheme by failing to recognize the distinction between an order to abate pollution issued pursuant to § 22a-431,[4] and a discharge permit issued pursuant to § 22a-430.[5] It claims that the commissioner was not statutorily mandated to include enforceable effluent limitations in the order because the only requirement under § 22a-431 is "a time schedule for the accomplishment of the necessary steps leading to the abatement of the pollution." We agree that the statute contains no language requiring the commissioner

A state may issue NPDES permits if the federal environmental protection agency (EPA) approves a state's proposal to administer its own program; 33 U.S.C. § 1342 (b); *Environmental Protection Agency* v. *State Water Resources Control Board,* supra, 208; *Mianus River Preservation Committee* v. *Administrator, Environmental Protection Agency,* supra. On September 26, 1973, the federal EPA approved and authorized the request by the Connecticut department of environmental protection to administer its own NPDES permit program in lieu of the federal program.

[4] General Statutes (Rev. to 1983) § 22a-431 provides: "The commissioner shall periodically investigate and review those sources of discharge which are operating pursuant to any order, permit, directive or decision issued by the water resources commission or the commissioner before or after May 1, 1967, and, if he determines that there has been any substantial change in the manner, nature or volume of such discharge which will cause or threaten pollution to any of the waters of the state, or if he finds that the system treating such discharge or the operation thereof, no longer insures or adequately protects against pollution of the waters of the state, the commissioner may issue an order to abate such pollution to such person or municipality. Such order shall include a time schedule for the accomplishment of the necessary steps leading to the abatement of the pollution." This case was briefed and argued on the basis that Connecticut's Water Pollution Control Act, revised to 1983, applied to the order in question, presumably because that was the statute in effect at the time of the issuance of the March, 1983 order. We therefore decided the case accordingly.

[5] General Statutes (Rev. to 1983) § 22a-430 provides in pertinent part: "(a) No person shall, after May 1, 1967 . . . initiate, create or originate any new discharge of water, substance or material into the waters of the state without first obtaining a permit for such discharge from the commissioner."

to include effluent limitations. The absence of any such affirmative language does not mean, however, that the commissioner was prohibited from incorporating such limitations in the abatement orders.

The 1983 order was a modification of a previous order. Section 22a-431 clearly provides that the commissioner may review "those sources of discharge which are operating pursuant to any order . . . and, if he determines that there has been any substantial change in the manner, nature or volume of such discharge which will cause or threaten pollution to any of the waters of the state, or if he finds that the system treating such discharge, or the operation thereof, no longer insures or adequately protects against pollution of the waters of the state, the commissioner may issue an order to abate such pollution to such person . . . . Such order shall include a time schedule for the accomplishment of the necessary steps leading to the abatement of the pollution."

The March, 1983 order did order "The Upjohn Company to take such action as is necessary" to abate the pollution in its wastewater, and included a time schedule of pre-November 30, 1983, and more stringent post-November 30, 1983, parameters with which Upjohn was ordered to comply. The authority to order abatement necessarily carried with it the authority to set the limits of the permitted pollution. The commissioner was well within his statutory bounds to have included effluent limitations in the § 22a-431 order issued to Upjohn.[6]

---

[6] The parties disagree as to whether the FWPCA and the federal EPA's regulations promulgated thereunder required that enforceable effluent limitations be imposed in the March, 1983 order. We need not reach the issue of whether federal law required that the March, 1983 order contain enforceable effluent limitations because, even if we assume that federal law did not so require, we conclude that the limits contained in the order constituted effluent limitations and not merely goals.

Upjohn also claims that the limits contained in the order were goals or estimates. Under § 22a-430 (e), the commissioner may issue a § 22a-430 permit once he determines that the discharger is in compliance with an order issued pursuant to § 22a-431. Upjohn argues that because of this statutory linkage between orders and permits, the pollutant parameters contained in the March, 1983 order do not ripen into enforceable limitations until the commissioner issues a permit. We disagree.

There is more to the interrelation of orders and permits than Upjohn suggests. Section 22a-431 orders are as much an enforcement tool of the commissioner in regulating water pollution as are new discharge permits. Section 22a-431 expressly authorizes the commissioner to include time schedules in these orders for dischargers to follow in progressively alleviating unacceptable pollutant levels. Section 22a-431 orders, however, are not limited to that sole function.

First, the commissioner may use such orders to regulate those discharges existing prior to March 1, 1967. Under § 22a-430, state permits for a new discharge are issued only in the first instance for those discharges initiated, created or originated after that date. See footnote 5, supra. The commissioner, when issuing a § 22a-431 order for regulating these earlier discharges, has the authority to impose whatever conditions are necessary to satisfy state and federal law, including enforceable effluent limitations. See General Statutes § 22a-424 (k).

Second, under General Statutes § 22a-430 (c), "permits issued pursuant to this section shall be for a period not to exceed five years, except that any such permit shall be subject to the provisions of section 22a-431." Thus, it is clear that the commissioner is authorized to use orders to modify existing permits whenever

there is a change of circumstances, that is, when there is either a change in the manner, nature or volume of the discharge, or when the commissioner finds that the existing treatment system no longer adequately protects state waters. See footnote 4, supra. A § 22a-431 order may be used, as was done here, to modify not only permits, but also orders previously issued under the same statutory authority. General Statutes (Rev. to 1983) § 22a-431 provides that "[t]he commissioner shall periodically investigate and review those sources of discharge which are operating pursuant to *any order,* permit, directive or decision issued by . . . the commissioner . . . ." (Emphasis added.)

We conclude that the water pollution control statutory framework envisions a wide-ranging use of § 22a-431 orders in addressing water pollution problems that were the subject of previous orders, permits, directives or decisions of the commissioner. It would be contrary to that broad mandate if such orders became enforceable only upon their conversion into permits under § 22a-430 (e). The fact that Upjohn was in the process of installing a complex biological treatment program under a § 22a-431 order did not strip the commissioner of his statutory authority to establish the effluent limitations that he deemed necessary to effectuate the purposes of the CWPCA and the FWPCA. See General Statutes § 22a-424 (specifying the various powers and duties granted to the commissioner).

## B

Upjohn also claims that the trial court's decision was legally and logically inconsistent with the facts found. It argues that the referee's conclusion, accepted by the court, *M. Hennessey, J.,* that the numbers in the order were legally enforceable effluent limitations, is fatally inconsistent with certain other findings of the trial court, *Allen, J.* Those findings were that the purpose

of the order was to require the defendant to install a system based on the best available technology, and that the effluent limitations for this system were to have been based on the operation of the system over a one year operating period. Reading Judge Allen's findings in their entirety, together with the pertinent portion of the order, we find no such fatal inconsistency.

In connection with these findings, Judge Allen also noted that the order stated that " 'the effluent quality' from the treatment system was to have been evaluated for a one year period after which time revised limitations were to be established." Judge Allen also noted, however, that "the modification order goes on to state that 'the Commissioner reserves the right to establish more stringent effluent limitations . . . .' Therefore, although this exception is true, it does not bar the commissioner from changing the effluent limitation."

Moreover, these determinations by Judge Allen must be read together with the language of the order on which they were based. The order acknowledged that the treatment facilities to be constructed by Upjohn "represent the best available technology economically feasible," and that "[t]he effluent quality from the treatment facilities will be evaluated for a one year operating period beginning on December 1, 1983 after which time revised effluent limitations will be adopted, if necessary to reflect the actual ability of the treatment facility to remove the permitted pollutants." This language, however, immediately preceded the following: "Notwithstanding the above sentence, the Commissioner specifically reserves the right to establish more stringent limitations pursuant to Chapter [446k] of the Connecticut General Statutes and the Federal Water Pollution Control Act should it be determined that these limitations will not protect the water quality of the receiving waters." Thus, although the order contem-

plated that Upjohn would construct a pollution abatement system using the best available technology, it also made clear that the commissioner retained his statutory authority to protect water quality.

Further, nowhere in the order are the effluent limitations identified as effluent "goals" or effluent "estimates." "Effluent limitations" is a term of art. It is defined in 33 U.S.C. § 1362 (11) as "any restriction established by a State or the Administrator on quantities, rates, and concentrations of chemical, physical, biological, and other constituents which are discharged from point sources into navigable waters . . . ." A term with a specific statutory meaning used repeatedly in the commissioner's order is inconsistent with Upjohn's argument that the order contained only unenforceable goals or estimates. This is especially true given the similarity of the wording and format of this order to the prior, November, 1981 order issued to Upjohn.

In addition, the mandatory language of the order supports the commissioner's position that these limits were enforceable. The order states in part: "The Commissioner . . . orders The Upjohn Company to take such action as is necessary to: . . . [i]nsure that all discharges described in this order shall not exceed and shall otherwise conform to the specific terms and general conditions specified herein." This language simply does not comport with Upjohn's claim that the order was meant to be construed as containing unenforceable goals or estimates during the interim stage of installing the treatment facility.

Finally, if Upjohn did not understand the March, 1983 order to contain legally enforceable obligations, it should have objected to the language of the order when it was issued to rectify any inconsistencies between Upjohn's understanding and the specific terminology

of the order. Cf. *Connecticut Fund for the Environment, Inc.* v. *Job Plating Co.,* 623 F. Sup. 207, 216–17 (D. Conn. 1985) (defendant is precluded from challenging the validity of its NPDES permit in an enforcement proceeding); see also *Connecticut Fund for the Environment, Inc.* v. *Upjohn Co.,* 660 F. Sup. 1397, 1413 (D. Conn. 1987). In that private enforcement action against Upjohn involving the same violations of the March, 1983 order, Upjohn argued, inter alia, that the order established only goals and not enforceable limitations. *Connecticut Fund for the Environment, Inc.* v. *Upjohn Co.,* supra, 1409. The federal district court found that the terms of the order under the Connecticut statutes pursuant to which it was issued, constituted enforceable limitations. Id., 1410. In addition, the court noted that the defendant should have pursued its objections through an administrative challenge under General Statutes §§ 22a-436 and 22a-437, or by filing for review in the court of appeals, rather than after the fact in defense to an enforcement action. Id., 1413.

## II

Upjohn next claims that the trial court erred in concluding that General Statutes § 22a-438[7] authorized a forfeiture for violating a § 22a-431 order issued by the commissioner. Upjohn argues that because § 22a-438 authorizes forfeitures only against "[a]ny person who . . . violates any provision of this chapter," it does

---

[7] General Statutes (Rev. to 1983) § 22a-438 provides in pertinent part: "(a) Any person who . . . violates any provision of this chapter shall forfeit to the state a sum not to exceed ten thousand dollars, to be fixed by the court, for each offense. Each violation shall be a separate and distinct offense and, in case of a continuing violation, each day's continuance thereof shall be deemed to be a separate and distinct offense. The attorney general, upon complaint of the commissioner, shall institute a civil action to recover such forfeiture. The provisions of this section shall not apply to a person . . . during the time when a hearing [by the commissioner] pursuant to section 22a-436 or an appeal [to the superior court] pursuant to section 22a-437 is pending."

not apply to one who violates the provisions of an order by the commissioner. Upjohn claims that the legislature did not expressly make violations of orders subject to the forfeiture provision, and that, therefore, § 22a-438 should apply only to the express statutory prohibitions in chapter 446k, such as General Statutes § 22a-417 (prohibiting the discharge of sewage into tributaries of water supply impoundments or the Salmon River), § 22a-427 (prohibiting the discharge of wastes in violation of any provision of chapter 446k), and § 22a-430 (prohibiting any discharge without a permit). Upjohn contends that a § 22a-438 forfeiture cannot be imposed for violations of orders issued by the commissioner in his administrative capacity. See General Statutes § 22a-428 (orders to municipalities to abate pollution); General Statutes § 22a-430 (d) (orders to abate pollution for discharges without a permit or in violation of a permit); General Statutes § 22a-431 (orders to abate pollution after an investigation of the discharge); General Statutes § 22a-432 (orders to correct potential sources of pollution); General Statutes § 22a-433 (orders to the owner of the land from which the pollution is emanating).

Further, Upjohn contends that this distinction between legislative prohibitions and orders by the commissioner for purposes of applying § 22a-438 is consistent with General Statutes (Rev. to 1983) § 22a-435,[8] which provides for injunctive relief for failure to comply with orders issued pursuant to §§ 22a-418, 22a-428, 22a-429 and 22a-431. It argues that because § 22a-435 refers, inter alia, to § 22a-431 and not to § 22a-430, it evinces an intent by the legislature that the commissioner,

---

[8] General Statutes (Rev. to 1983) § 22a-435 provides in pertinent part: "If any person . . . fails to comply with any order to abate pollution, or any part thereof, issued pursuant to the provisions of section 22a-418, 22a-428, 22a-429 or 22a-431 . . . the commissioner may . . . bring an action . . . to enjoin such person . . . from maintaining such pollution . . . ."

when addressing violations of abatement orders is limited to seeking injunctive relief, and is not statutorily empowered to seek forfeiture under § 22a-438 as well.

The commissioner argues that the stay of a continuing violation when a hearing on an order or an appeal is pending demonstrates that the legislature intended § 22a-438 to apply to violations of administrative orders, and any statutory interpretation to the contrary would render this language unnecessary. Upjohn, in reply, argues that to interpret § 22a-438 as applying only to the express legislative violations of chapter 446k, does not make the stay provision unnecessary. It claims that if the commissioner, acting pursuant to § 22a-430 (d), issues an order to abate to a person who has initiated a discharge without a permit in violation of § 22a-430, and that person then requests a hearing or takes an appeal, the stay provision would prevent the continued accrual of any penalties during the pendency of the hearing or appeal. We agree with the commissioner.

It is true that an order to abate issued under § 22a-430 (d) would trigger the § 22a-438 stay if the discharger utilizes the review provisions of either § 22a-436 or § 22a-437. This does not mean, however, that the application of the stay provision is limited to this one instance where the commissioner can issue an abatement order. The legislative history of § 22a-438, and the statutory scheme of the CWPCA, convince us that the forfeiture statute was meant to apply to violations of any administrative order issued under the authority of chapter 446k, in addition to violations of the statutes in the CWPCA that contain express prohibitions.

Regarding the legislative history, there are two amendments to § 22a-438 that show the legislature

intended the forfeiture statute to apply to violations of the commissioner's various chapter 446k administrative orders, including the type of order that is the subject of this appeal, namely, a § 22a-431 order to abate. The first amendment, Public Acts 1969, No. 486, entitled "An Act Concerning Forfeiture for Violations of the Water Pollution Control Statutes," added the following sentence relating to instances of nonapplication of the forfeiture provision: "The provisions of this section shall not apply to a person or municipality during the time when a hearing pursuant to section [22a-436] or an appeal pursuant to section [22a-437] is pending." The legislature passed this amendment so that a penalty could not be applied during the pendency of a hearing before the commissioner or an appeal to the Superior Court.[9] The second amendment, Public Acts 1986, No. 86-239, entitled, "An Act Concerning Protection of the Waters of Connecticut," made a technical change clarifying the 1969 stay provision. The last sentence of § 22a-438 was amended to read as follows: "The provisions of this section *concerning a continuing violation* shall not apply to a person or municipality during the time when the hearing *on the order* pursuant to section 22a-436 . . . or an appeal pursuant to section 22a-437 is pending." (Emphasis on amended language.) This amendment clarified that the stay during the pendency of a hearing or an appeal applies to continuing violations and not to first time

---

[9] "[W]here there has been a violation of the water pollution statute, the violator, during the period of time that an appeal is pending, will have the statute toll insofar as he is running up damages. In other words, once he files an appeal the damages will be stayed until the appeal is heard." 13 H.R. Proc., Pt. 7, 1969 Sess., p. 3472, remarks of Representative Peter W. Gillies. "It is our clear intention that the provision of this section providing for a thousand dollars per day forfeiture should not apply to anybody [who] is taking an appeal on a matter involved under purview of these statutes." 13 S. Proc., Pt. 5, 1969 Sess., p. 2344, remarks of Senator John F. Pickett.

violations, and, in addition, that the stay applies to the order of the commissioner that is being appealed.[10]

Further, in the context of the CWPCA in its entirety, we do not view General Statutes § 22a-435, which provides for injunctive relief, as an exclusive remedy for violations of § 22a-431. Upjohn argues that the fact that this section does not refer to § 22a-430 shows that abatement orders issued under § 22a-431 were intended to be subject to enforcement processes separate from those for permits issued under § 22a-430. We are not persuaded that the failure of § 22a-435 to refer to § 22a-430 indicates that the commissioner, when seeking redress for violations of abatement orders, is limited to injunctive relief. Since § 22a-430 has its own injunctive relief provision, § 22a-430 (d), for dischargers oper-

---

[10] The amendment "clarifies that the state [sic] provisions of section 22a-438 apply only to the order which was appeals [sic] and makes the bill effective on passage." 29 H.R. Proc., Pt. 14, 1986.Sess., p. 5328, remarks of Representative John J. Tiffany. "The third change puts in—concerning a continuing violation which was of concern when the original legislation was passed on by the Committee that this only applied to a continuing violation and not the first time violation." 29 S. Proc., Pt. 5, 1986 Sess., p. 1740 remarks of Senator Eric R. Benson. "Commissioner of Environmental Protection may enforce the water pollution statutes by instituting a suit for civil penalty or issuing an order to comply with the provisions of the water pollution chapter. General penalty provision of the water pollution chapter states that the penalty shall not apply during a hearing or an appeal. In some instances the same company will be fined $10,000 for violation of a statute of the chapter and will be in noncompliance of an order to clean up the pollution. It is not clear whether the [stay] provisions of the statute apply to both the fine and the order when the company appeals the order. This proposal clarifies that the [stay] provisions will only apply to such orders of the commissioner which have been appealed or which the company has requested a hearing." Id., p. 1743, remarks of Senator Eric R. Benson.

Upjohn claims that because their claim is to be reviewed under General Statutes (Rev. to 1983) § 22a-438, the added language from the 1986 amendment; Public Acts 1986, No. 86-239; is not applicable to the present case. This is incorrect. This amendment was meant to clarify the legislature's earlier intent; it did not change existing law. An amendment that merely clarifies statutory language can be considered retroactively in construing the meaning of a statute. See, e.g., *State* v. *Magnano,* 204 Conn. 259, 277–78, 528 A.2d 760 (1987).

ating either without a permit or in violation of a permit, it is hardly surprising that § 22a-435 does not refer to § 22a-430.

Finally, § 22a-438 expressly applies to any provision in chapter 446k. The common theme among the various order and permit statutes in chapter 446k is the delegation of authority from the legislature to the commissioner. The commissioner's task is to transform generally applicable effluent limitations and other standards provided by the CWPCA and the FWPCA into specific obligations of the individual discharger. The defendant's argument that orders to abate are exempt from forfeiture because the obligations created thereunder are established by the commissioner, would undercut the viability of that scheme of delegation. Under Upjohn's suggested construction of § 22a-438, dischargers who operated in violation of an administrative order would be subject only to prospective remedies, and would be immune from the monetary sanctions authorized by § 22a-438. Given the remedial nature of the CWPCA to prevent, control and abate pollution of the waters of the state; General Statutes § 22a-424 (b); it would defy reason if dischargers could violate administrative orders and not be penalized under § 22a-438 for their past conduct. Under that scenario, a discharger could violate any such order without risk of penalty until the commissioner sought to enjoin it from maintaining the pollution. We conclude, therefore, that violations of orders to abate issued under § 22a-431 are subject to forfeiture.

There is no error.

In this opinion the other judges concurred.