[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In connection with a plan to construct a mall in North Haven by Mall Properties, Inc. (hereinafter "Mall"), Stanley, J. Pac, Commissioner, Department of Environmental Protection (hereinafter "DEP") on November 17, 1982 formally determined that a proposed system to treat storm water and sewage into the Quinnipiac River from the mall would protect that river from pollution. On December 2, 1982, DEP denied a request by the City to reconsider. While the storm water permit is federally required, the state acts as the issuing agent; the sanitary permit is a Connecticut obligation. When Mall completes the actual installment of the system in compliance with the preliminary approval, the actual five year permits would be issued. Conn. Gen. Stat. sec. 22a-430 (formerly sec. 25-54i). Because the mall has not been constructed, no five year permit has ever been issued.
The City of New Haven (hereinafter, "City") appeals the decision of DEP. The court denies the appeal.
I CT Page 10345
The court has issued a memorandum on various intermediate motions. File 146. That memorandum should be considered part of this decision. In addition, a United States District Court has review this mall development for the third environmental permit, the Section 404 permit from the Army Corps of Engineers; the Federal Court remanded the permit for reconsideration in order to eliminate consideration of non authorized socio-economic factors. Mall Properties, Inc. v. Marsh,672 F. Sup. 561 (D.Mass. 1987). The court is unaware of the status of the Section 404 permit. All three permits are necessary for the developer.
Scheduling this appeal has been awkward. The offices of counsel are some distance apart; the court was reassigned out of Hartford and had to resolve the various preliminary motions through hearings fitted into a regular docket. The legal staff of the City was reduced, necessitating a substitution of counsel who had to become familiar with the file and to rearrange a hectic trial schedule. Nevertheless, the City has pursued this appeal with intensity. There are about 50 filings in this administrative appeal.
In any event, the file in this case includes a carton box of documents, not all of which are clearly identified. Counsel have agreed that those documents are part of the file although counsel at this time probably cannot provide labels, particularly since the City attorney is unfamiliar with the early history of the controversy.
 II
Following the first DEP hearing and before the record was closed on the Mall's application for permits, the City intervened under section 22a-19. The City as an intervenor is statutorily aggrieved for an appeal, but in the appeal the City can only raise issues affecting the public trust in the natural I resources of the state. Connecticut Water Co. v. Beausoleil,204 Conn. 38, 562 A.2d 1329 (1987). The City under section 22a-19
is strictly limited to environmental issues. Mystic Marine-life Aquarium, Inc. v. Gill, 175 Conn. 483, 490, 400 A.2d 726
(1978).
While it may be possible to establish classic standing under nonenvironmental factors so as to maintain an appeal, the City in this case has not produced convincing evidence that it has a specific, personal, and legal interest which has been specifically and injuriously affected by the DEP action. State Medical Society v. Board of Examiners in Podiatry, 203 Conn. 295,299-300, 524 A.2d 636 (1987). The rights of the City have not been adversely affected by the DEP decision. Red Hill CT Page 10346 Coalition Inc. v. Conservation Commission, 212 Conn. 710, 716,563 A.2d 1339 (1989). Cf. Pomazi v. Conservation Commission,220 Conn. 476, 481-484, ___ A.2d ___ (1991). The proffered three 1982 studies — the North Haven Mall Proposal: Economic and Fiscal Impacts, Proposed North Haven Mall: Retail Market Impact, and A Large Scale Regional Shopping Mall vs. the Regional Downtown; an Economic Impact Study of the Proposed North Haven Mall — analyze the competitive effect on New Haven merchants of the construction of the North Haven mall. Exhibit 15-I-B. The offered testimony from a former member of the Development Office of the City of New Haven based on her "practical experience" was not convincing. The City has not established traditional aggrievement. If the City had done so it could then raise any issue relevant to whether DEP acted illegally. Connecticut Fund for the Environment, Inc. v. Stamford, supra, fn. 3.
 III
Generally, a decision of DEP must be sustained unless it is arbitrary, illegal or not reasonably supported by the evidence. The appellants have the burden of proof. Red Hill Coalition, Inc. v. Conservation Commission, supra, 718.
The scope of this appeal is limited by the authority of DEP and the status of the City and by the dimensions or its briefed argument. Gaudet v. Safeco Insurance Co., 219 Conn. 319,403, ___ A.2d ___ (1991); Beacon Falls v. Posick, 17 Conn. App. 17,549 A.2d 651 (1988).
a-1
The City claims the DEP decision is illegal and arbitrary in absence of properly promulgated section specific regulations. This claim is absolute: whatever the substantive or factual factors in this mall discharge, the simple absence of preexisting regulations is a bar to any permit, whether or not the DEP decision was supported by the evidence. If the City did raise such an evidentiary objection, an examination of the record, including exhibits and transcript of the May 6, 1982 hearing confirms a substantial basis of fact for the findings of DEP. Briggs v. State Employee Retirement Commission, 210 Conn. 214,554 A.2d 292 (1989). On the other hand, the City appears to claim DEP was in error by not considering economic impact. In arguing economic issues the City has confused standing and substance. Whether the City has classic or statutory standing, an agency like DEP cannot wander from its statutory mandate of reviewing only pollution caused by discharge. Section 22a-430. DEP has limited authority. Connecticut Fund for the Environment, Inc. v. Stamford, 192 Conn. 247, 250, 470 A.2d 1212 (1984); Middletown v. Hartford Electric Light Co., 192 Conn. 591, 597, CT Page 10347473 A.2d 787 (1984). Even if the City had established classic aggrievement, that path may lead to the same destination.
The declaration of state policy does not include any requirement to balance pollution against the need for economic growth. Cf. sections 22a-422 and 22a-36. The state policy is set: pollution is a public nuisance and impairs the legitimate beneficial use of water. DEP does not take into its evaluation the economic health of the City, and particularly it can not be concerned over any economic impact on New Haven of the construction of the mall. The issue is dirty water and not unfair competition. The Hearing Officer in his proposed decision, Conclusion of Law No. 4 stated that economic impacts do not have relevancy on whether discharges pollute the water. Exhibit III-A. There was no requirement that DEP consider economic values in reaching its decision.
While the Federal Environmental Protection Agency did promulgate regulations for itself, 40 C.F.R. § 122-125, Connecticut did not have regulations in 1982. Natural Resources Reference Council, Inc. v. Train, 510 F.2d 692, 709-710
(D.C. Cir., 1975). Not until 1984 did the General Assembly amend section 22a-430(b) to require regulations to establish procedures, criteria and standards as appropriate. P.A. 84-219: 4th to 7th sentences of section 22a-430(b). Cf. Savings and Loan League of Connecticut, Inc. v. CHRA, 184 Conn. 311, 439 A.2d 978
(1981). The regulations were adopted in accordance with Chapter 54 of the Statutes which gave the City an opportunity to participate.
In this case the difference between classic and statutory aggrievement may be significant if the lack of formal regulations in 1982 is a non-environmental issue in this appeal, then the City, without classic standing, might not be able to raise that issue to sustain the appeal. The parties over the course of this appeal have focused on the absence of regulations in 1982. Assuming the issue is viable, the court rejects the City's position.
The City cites Monroe v. Middlebury Conservation Commission, 187 Conn. 476, 447 A.2d 1 (1982). The case is distinguishable from the present situation. In Monroe the agency could allow a local water supply plan if it comported with the regional water supply plan; apparently no other standard. In the absence of a statutorily mandated regional water supply plan, the court held that local water supply plan need not be submitted to the agency. (Extending the reasoning to this appeal, presumably the Mall need not have applied for any discharge permits.) Without any statutory direction and to avoid constitutional problems (due process) the court held that even CT Page 10348 in the absence of statutory requirements for appropriate regulations, regulations would be required before an agency could exercise its authority, unless the statute precludes such requirement. See, Finn v. PZC, 156 Conn. 540, 244 A.2d 391 (1968); section 8-25.
In 1982, DEP had the benefit of statutory definitions in section 22a-423 (formerly section 25-54b), a statutory mandate as to powers and duties in section 22a-424 (formerly section 25-54c) and a declaration of policy in section 22a-422. In addition, the permit statute required the DEP to protect the waters of the state from pollution and, if necessary, to impose additional conditions to protect the water. Section 22a-430(b). Pollution means "rendering unclean or impure or prejudicial to public health of any waters"; "rendering unclean or impure means any alteration of the physical chemical or biological properties of any of the waters." Section 22a-423. See also water quality standards in section 22a-426. The delegation of discretionary authority to DEP, an executive agency, is valid because premised upon a positive statutory basis supported by sufficient statutory guidelines. A delegation of legislative power must be based on a statute that declares "a legislative policy, establish primary standards for carrying it out or lay down an intelligent principal to which the administrative offices or body must conform." State v. Stoddard, 126 Conn. 623,628, 13 A.2d 586 (1940); Bottone v. Westport, 209 Conn. 652,553 A.2d 576 (1989); State v. White, 204 Conn. 410,528 A.2d 811 (1987). The statutory decision for discharge permits met the Stoddard test. In 1982 the regulation then in effect directed applicants for discharge permits to "refer directly to
Section 25-54i (now section 22a-430) of the Connecticut General Statutes". Conn. Reg. section 25-54i — 1.0. Cf. section 25-54i-5.2 for section 22a-430 (f) and (g). Administrative agencies may exercise wide discretion in performance of their duties. Riley v. State Employees' Retirement Commission,178 Conn. 438, 442, 443, 423 A.2d 87 (1979).
The legislature is assumed to have enacted sections22a-423, 22a-424 and 22a-430 to meet constitutional requirements. When faced with two statutory interpretations, the court should select the one that passes constitutional muster. State v. Aspinall, 6 Conn. App. 546, 550, 506 A.2d 1063 (1986). The burden is on the one who claims unconstitutionality. If there is adequate statutory direction, the task of the court is to determine whether the administrative decision is supported by substantial evidence. Persico v. Maher,191 Conn. 384, 409, 465 A.2d 308 (1983). As a remedial measure, the discharge statute should receive a liberal interpretation. The lack of regulation would be immaterial. See Old Saybrook v. CT Page 10349 Stanley J. Pac, Commissioner of Environmental Protection, et al., 11 CLT No. 32, 9 (Conn.Super.Ct. 1985).
Based on the credible evidence at the hearing, DEP determined that the mall discharge system would reduce the suspended solids entering the river, would have no effect on fish in the detention pond and the river and would be consistent with a Class B river upgrade instead of the current Class C rating. North Haven's sewage treatment system could satisfactorily treat the proposed sewage discharge from the mall. DEP referred to specific guidelines established by the United States Environmental Agency for storm water. Record, III A, Proposed Decision. DEP complied with the statutory mandate. Compare, Solmon Brook Convalescent Home v. Commissioner on Hospital Health Care, 177 Conn. 356, 417 A.2d 358 (1979); Maloney v. Pac, 183 Conn. 313, 439 A.2d 349 (1981). Again, no permit is issued until the installation of the system in full compliance with this approval. Section 22a-430 (b).
Section 22a-430(b) was amended in 1984 by adding the 4th through 7th sentences specifically requiring regulations.P.A. 84-219, effective May 24, 1984. There is a general presumption that a non-procedural amendment is intended to change the existing law and to operate prospectively. State v. Magnano, 204 Conn. 259, 277, 528 A.2d 760 (1987); Enfield Federal Savings and Loan Association v. A. Gilbert Bissell, Jr., 184 Conn. 569, 571, 440 A.2d 931 (1979) The amendment implicitly recognized the nonregulatory procedure becauseP.A. 84-219 also required 1984 renewals for permits be filed by June 1, 1984, just one week after the amendment became effective and in all probability before regulations could be put in place. See also section 22a-6; Savings Loan League of Connecticut, Inc. v. CHFA, 184 Conn. 311, 439 A.2d 978 (1981).
In the absence of any evidence to the contrary, the current regulations were not inconsistent with the 1982 hearing. McCallum v. Inland Wetland Commission, 196 Conn. 218,492 A.2d 508 (1985).
a-2
The DEP has responsibility for storm water discharge under the Federal Clean Water Act. 33 U.S.C section 1251 et. seq. Section 22a-430(a). Generally speaking, if the state permit procedure for storm water discharges conforms to state law, the federal authorities creates a state authority to administer the federal controls. Mianus River Preservation Committee v. Administrator, Environmental Protection Agency, 541 F.2d 899
(2nd Cir. 1976). When that delegation was approved in 1973, Connecticut had no regulations. Two subsequent Connecticut CT Page 10350 cases might have suggested that officially promulgated regulations were necessary before DEP as an administrative agency could properly exercise its statutory authority, including the administration of the federal permit. Salmon Brook Convalescent Home v. Commission, supra; Cheshire Convalescent Center, Inc. v. Commission, 34 Conn. Sup. 225, ___ A.2d ___ (1977). If a rule used by an agency has a substantial impact on rights and obligations of parties who appear before the agency, that rule is one of substance under Chapter 54 of the Statute. The threshold interest is what rule, if any, was used in this particular case and under what statutory authority. Merely to argue that regulations are universally mandated is to distort Salmon Brook Convalescent Home, supra. The threshold question is what rule under whatever name was used in fact. For reasons already recited, in this case on these facts and under these statutes the DEP did not violate the Salmon test. Old Rock Road Corporation v. Commissioner of Environmental Protection, No. 128883 (Sup. Ct. Hartford/New Britain May 14, 1979) (Borden, J.).
Based upon its position in this hearing, DEP had resisted any interpretation of Connecticut law which would mandate Connecticut regulations. In the absence of regulations, the federal authorities did not revoke the delegation to Connecticut of an illegal permit oversight. DEP has issued federal permits in the absence of regulations. Reference is accorded to an agency interpretation followed for a long period of time. Sulton v. Lopes, 201 Conn. 115, 120, 513 A.2d 139
(1986); Mumford Cove Association, Inc. v. Town of Groton,786 F.2d 530 (2nd Cir. 1986); 33 U.S.C. § 1342(c).
About seven years after this appeal was returned to court (including a two year stay of proceedings), the City requested admission of the genuineness of fourteen documents. File item 139. DEP objected. File item 140. Practice Book Section 237. The court rules on the issue as presented.
The City also sought to present additional evidence. File item 132.
The additional material, attached to DEP's objection, relates to the regulation controversy between federal and state. Some, if not all, of these items were excluded by the court during hearings on prior motions. At least one, the fifth item, was marked as an exhibit.
Discovery motions in an administrative appeal must be considered in conjunction with section 4-183 which focuses the appeal on the record from the administrative agency. Only in limited circumstances can the court either hear evidence or remand for additional evidence. The court must find it reasonably CT Page 10351 probable that evidence outside the record will be required before discovery or other evidence is allowed. Practice Book Section 218. This court cannot even accept a factual stipulation by the parties which was not before the agency. Neri v. Power,3 Conn. App. 531, 537-538, 409 A.2d 528 (1985), cert. denied196 Conn. 808, 494 A.2d 905 (1985).
The opportunity to present evidence — testimony or discovery — to supplement the record is reserved for extraordinary cases. Ierardi v. Commission on Human Rights and Opportunities, 15 Conn. App. 569, 583-585, 545 A.2d 602 (1988), aff. 209 Conn. 813, 550 A.2d 1082 (1988).
The City proposes ten documents for admission. It should be remembered that DEP conceded there were no detailed promulgated official regulations in 1982, instead, it asserts such regulations were not necessary even if, for whatever reasons, including a 1984 statutory mandate, DEP did subsequently adopt formal regulations. The permit program had been in effect for at least ten years without formal regulations. Legal arguments and settlement negotiations are not admissible; however, those legal arguments were available even without admission as elements in the legal briefs before the agency and this court.
The court finds no basis to allow either additional evidence or discovery, so motion 132 is denied and motion 140 is sustained.
Because of the derivative legality of the procedure for the federal permit, the court need not isolate the Connecticut process for separate review. Both the federal and state procedures rise or fall together on the same analysis as the parties have argued this case.
a-3
The City moreover, can challenge the failure of -DEP to adopt regulations only if it can demonstrate prejudice to its rights and the City has the burden to demonstrate prejudice from the alleged failure to adopt. Goldberg v. Insurance Department, 207 Conn. 77, 83-88, 540 A.2d 365 (1988). The application of Mall was subject to a full hearing with the record open for the following two months and oral argument before DEP two months later. The basis for the ultimate decision was clearly laid out at the initial public hearing. The City did not demonstrate any prejudice.
 b
The City claims that DEP was arbitrary, capricious CT Page 10352 and in abuse of its discretion when it denied the City's December 17, 1982 request for reconsideration and rehearing of the DEP decision of November 17, 1982.
Apart from reiterating that DEP lacked regulations, the City based its request on two evidentiary events. First, a major storm had flooded the mall site on June 5, and 6, 1982 suggesting to the City that DEP should reevaluate the proposed storm water detention system. The storm had incurred one month before the record was closed on the initial hearing and three months before the arguments before DEP. Assuming that DEP was unaware of the two day rain storm, DEP was notified of the flooding before the November 17th decision and the City had opportunity to litigate the issue at oral arguments on September 8, 1982. The two day flood was estimated to be a 200 year flood. At the May 6, 1982 hearing Carlton Noyes of Cortell and Associates testified he based his calculation of actual water into the river on a seven day, ten year low flow, a very severe hydrologic condition. Transcript, I-A, p. 80; Jason M. Cortell and Associates, Inc. "Surface Water Resources and Water Quality", hearing exhibit 2, I-B, section 3.2.4, p. 23. DEP did not abuse its discretion in declining to review the storm water detention system because a specific extraordinary storm — 200 year flood — was so far beyond a predetermined statistical recurrence interval. The effects of a reasonably predictable flood on quality of water charges were considered in evaluating the permit applications. Moreover, there is evidence that flooding could dilute pollutant concentrations, the consideration involved in these two applications. Flooding per se, on the other hand, is not a direct concern; rather that issue is to be resolved by the Army Corps of Engineers in connection with the Section 404 dredge and fill permit.
Second, R. H. Macy Co., one of the anchor tenants for the mall, had withdrawn from the project. The approval of the applications for the two permits, however, is not based on the number or identity of particular tenants. Rather the size of the overall mall development determines the discharge calculations. Once the discharge limitations are set, the Mall must honor them, irrespective of the tenant roster. There is no recalculation of limits each time there is tenant turnover in this fifty-nine acre regional shopping mall. If the Mall can find no replacement tenant for R. H. Macy Co., the economic feasibility of this project may be in jeopardy but that issue is not one of the elements used by DEP to evaluate storm and sewage discharge into the river.
The City has not established that the DEP denial for reconsideration and rehearing was arbitrary, capricious or an abuse of discretion. CT Page 10353
The City claims that DEP was in error when it made the Final Decision without preparing an environmental impact statement as required by section 22a-1b(b) which requires each state "agency responsible for the primary recommendation or initiation of actions which may significantly affect the environment shall in the case of each such proposed action make a detailed written evaluation of its environmental impact before deciding whether to undertake or approve such action" (emphasis added). This section must be read together with section 22a-1c
which defines actions which may significantly affect the environment for purpose of section 22a-1b as "individual activities or a sequenced planned activities proposed to be undertaken by state departments, institutions or agencies, or funded in whole or in part by the state. . ." (Emphasis added.)
The City misconstrues these statutes. An environmental impact-statement — is required from the state when it initiates or recommends the action; the state must be the proponent. Here the state is only the regulatory agency. See Shelton v. Commissioner, 193 Conn. 506, 508-515, 479 A.2d 208 (1984).
To ensure thoughtful and meaningful evaluation of environmental facts by agencies, an impact statement is required whenever a project advanced by the state will arguably damage the environment. Manchester Environmental Coalition v. Stockton, 184 Conn. 51, 63-69, 441 A.2d 68 (1981). The case, the only one cited for its claim, does not support the City for in the case the "state department of commerce initiated steps to develop an industrial park." Manchester Environmental Coalition v. Stockton, supra, 53; Westport v. State, 204 Conn. 212,527 A.2d 1177 (1987) (state constructed a truck weighing inspection station).
The City also argues that the construction and funding of any additional sewer lines in connection with the mall necessitates an environmental impact statement. Whether any funding to North Haven under section 22a-439 requires an impact statement is irrelevant to the present regulatory decision on discharge permits.
If the sewer issue was not raised during the administrative proceedings, the court need not examine the issue on appeal. Burnham v. Administrator, 184 Conn. 317, 320-324,439 A.2d 1008 (1981).
 IV
The City has not met its burden of proof. DEP did not act illegally, arbitrarily or abuse its discretion. CT Page 10354
Of course, with the adoption of the present regulations the court will not longer face the narrow issue raised by the City's appeal of no regulations. As the Mall and the state agree, the Mall must be in compliance with the regulations then in effect when a request is made for the five year permit upon installation of the discharge system. Section 22a-431; Reg. Conn. St. Ag. section 22a-430-3 and 4; 40 C.F.R. § 122-62(a)(3); Pac v. Upjohn, 21 Conn. App. 91, 571 A.2d 160 (1990). A municipality which is aggrieved by a decision of DEP has a right to a public hearing and appeal. Section 22a-430(b). Limited to this one issue, this appeal would be moot as being divorced from actual relief. Connecticut Resources Recovery Authority v. FOIC, 19 Conn. App. 489, 493-494, 562 A.2d 1145
(1989).
The City must comply with the same regulations whether this appeal is now denied or remanded. This appeal is also moot.
 V
Accordingly, the decision of DEP is affirmed and the appeal is denied.
SAMUEL S. GOLDSTEIN JUDGE, SUPERIOR COURT