[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO DISMISS
The defendant has moved to dismiss the above-captioned action on the ground that this court lacks jurisdiction because the plaintiff association lacks standing to bring this action. The plaintiff, the Connecticut State Medical Society ("Society") has filed a one-count complaint against the defendant, Connecticare, Inc. ("CCI"), alleging violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stats. § 42-110a et seq. The plaintiff seeks only injunctive relief and attorney's fees, not money damages.
At the February 26, 2002 hearing on the motion, Connecticare sought to base arguments in support of its motion on representations concerning facts relevant to the issue of standing. Connecticare presented no testimony; however, it offered into evidence an affidavit of its own attorney, to which the plaintiff did not object, concerning the authenticity of certain contracts between it and various entities (Ex. AA). The movant also presented into evidence answers the plaintiff had filed in response to interrogatories, documents concerning the plaintiff's purpose and its charter, and other documents. (Ex. A-C, E-J.)
The plaintiff presented no evidence but relies on the allegations of its complaint. See Connecticut Association of Health Care Facilities,Inc. v. Worrell, 199 Conn. 609, 618 (1986).
Allegations of the complaint
The Society alleges that it is a federation of eight county medical associations and that over 7,000 Connecticut physicians are members of the Society. It alleges that its purpose is
to promote the highest standards of medical care in the State of Connecticut, to work to preserve the integrity and independence of physicians, and to support the sanctity of the physician-patient relationship for the benefit of the public by, among other things, facilitating and assisting its physician members in providing top quality care to their patients, providing them with a unified voice and enabling them to take concerted action on behalf of their profession and of their patients, and acting and advocating on their behalf to preserve the ability, independence and freedom of physicians to render the best possible care to every patient. CT Page 4142
(Amended complaint, para. 2.)
The Society alleges that it brings the claim of violation of CUTPA "on behalf of [Society] physicians who provide health care services to enrolles in CCI's health plans ("CCI Enrollees" or "Enrollees") pursuant to contracts between CCI and independent practice associations, physician hospital organizations, practice groups or other contracting entities in which such physicians are members." (Amended complaint, para. 5.) The plaintiff alleges, in essence, that the manner in which Connecticare conducts itself with respect to the independent practice associations and other entities with which Connecticare contracts causes doctors who belong to these practice associations or entities to receive only a fraction of the fees that physicians actually charge for the service rendered to a patient, and that Connecticare by various means prevents the physicians or the entities that contract with it from having any control over the practices of Connecticare that result in this state of affairs. The Society alleges that Connecticare manipulates calculations of utilization by the provider organizations in a manner that forces those organizations to continue to contract with Connecticare or face paying off the artificially-created deficits in their utilization accounts. Generally, the plaintiff alleges that by operating as it does with respect to provider organizations with which it contracts, Connecticare reduces the income of physicians and impairs their relationships with their patients.
The Society additionally alleges that it brings the CUTPA claim on its own behalf It alleges that the defendant's
 wrongful conduct also causes direct injury to CSMS because CSMS has been, and continues to be, frustrated by defendant's practices in its efforts to achieve its purpose and CSMS has been required to devote significant resources to dealing with the issues concerning defendant's unfair practices.
(Amended complaint, para. 11.) The Society also alleges that it "has been forced to commit a tremendous amount of staff time to discussing and addressing with its members their complaints about and problems with CCI's practices, all of which was paid for by CSMS." (Amended complaint, para. 38.)
Standard of review
Pursuant to Practice Book § 10-31(a)(1), a motion to dismiss is the appropriate procedure for asserting a lack of jurisdiction over the CT Page 4143 subject matter of a civil action. A court lacks jurisdiction to decide a claim brought by a party that does not have standing to assert the claims pleaded. Unisys Corporation v. Department of Labor, 220 Conn. 689, 693
(1991). A claim of lack of standing is not to be decided on the basis of the legal sufficiency of the claim nor the evidence in support of the merits of the claim, but on the basis of the allegation of a direct injury in the complaint. As the Connecticut Supreme Court has repeatedly stated, the requirement that a claimant have standing
 is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive fights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented.
Connecticut Associated Builders Contractors v. Hartford, 251 Conn. 169,178 (1999); Gay Lesbian Law Students Assn. v. Board of Trustees,236 Conn. 453, 463 (1996); Unisys Corp. v. Dept. of Labor, 220 Conn. 689,693 (1991); Maloney v. Pac, 183 Conn. 313, 320 (1981).
The Connecticut Supreme Court has ruled that the dual objectives of standing, namely, concrete adverseness and diligent advocacy, "are ordinarily held to have been met when a complainant makes a colorable claim of direct injury he has suffered or is likely to suffer, in an individual or representative capacity." Maloney v. Pac, supra,183 Conn. 321.
With regard to the standing of an association such as the plaintiff Society to assert harm to its members, the Connecticut Supreme Court has adopted the federal standard of associational standing as set forth inHunt v. Washington State Apple Advertising Commission, 432 U.S. 333,343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). That standard is as follows:
 an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.
Id.; Connecticut Associated Builders Contractors v. Hartford, supra, CT Page 4144251 Conn. 185; Association of Not-for-Profit Providers for the Aging v.Dept. of Social Services, 244 Conn. 378, 386 (1998); Gay Lesbian LawStudents Assn. v. Board of Trustees, supra, 236 Conn. 464; State MedicalSociety v. Board of Examiners in Podiatry, 203 Conn. 295, 304 (1987).
An organization also has standing to sue for relief from injury to its own interests, apart from any injury to its members, since standing may be established "in an individual or representative capacity." ConnecticutAssociated Builders Contractors v. Hartford, supra, 251 Conn. 178, quoting Maloney v. Pac, supra, 183 Conn. 321; see also Warth v. Seldin,422 U.S. 490, 511 (1975).
The United State Supreme Court ruled in Havens Realty Corp. v.Coleman, 455 U.S. 363, 379 (1982), that an organization claiming that the defendant's acts frustrated its efforts to satisfy its underlying organizational purpose and required it to devote significant resources to counteract such acts alleged sufficient injury to itself to establish standing on its own behalf
The issue of standing may be decided by inspecting the allegations of the complaint and determining whether those allegations are facially sufficient to state a claim based either on direct injury to the association or injury to its members. In Connecticut Association ofHealth Care Facilities, Inc. v. Worrell, 199 Conn. 609, 618 (1986), the Supreme Court reversed a dismissal based on lack of standing noting that "[t]he allegations in the plaintiff's complaint are sufficient to confer standing." The United States Supreme Court has ruled that the issue on a question of standing of an association to assert a direct injury to itself is "the same inquiry as in the case of an individual: Has the plaintiff alleged such a personal stake in the outcome of the controversy as to warrant his invocation of . . . jurisdiction?" (Internal quotation marks and citations omitted.) Havens Realty Corp. v. Coleman, supra,455 U.S. 377, quoting Arlington Heights v. Metropolitan Housing Dev.Corp., 429 U.S. 252, 261, 50 L.Ed.2d 450, 97 S.Ct. 555 (1977), and Bakerv. Car, 369 U.S. 186, 204, 7 L.Ed.2d 663, 82 S.Ct. 691 (1962).
The United States Supreme Court ruled in Warth v. Seldin, supra,422 U.S. 501, that for purposes of ruling on a motion to dismiss for lack of standing, the trial court must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party.
Connecticut procedure likewise requires a court considering an issue of standing raised by a motion to dismiss to construe the allegations of the complaint in favor of the pleader. Ganim v. Smith Wesson Corp.,258 Conn. 313, 326 (2001); Cummings v. Tripp, 204 Conn. 67, 75 (1987); CT Page 4145Brewster v. Brewster, 152 Conn. 228, 233 (1964).
The court may also receive evidence that bears on the existence of a colorable claim of an injury to the plaintiff's interests. SeeConnecticut Associated Builders Contractors v. Hartford, supra,251 Conn. 189-191.
Burden of proof on issue of standing
It is well established that the plaintiff bears the burden of establishing that it has standing, even though the allegation of lack of standing has been raised by the defendant. Connecticut AssociatedBuilders Contractors v. Hartford, supra, 251 Conn. 181; Fink v.Golenbock, 238 Conn. 183, 199 (1996). Where only parties with certain attributes have standing to bring a particular claim, the task of establishing a "colorable claim" consists of showing that the plaintiff has the required attributes, including that it has suffered a direct injury or that its members have done so. Connecticut Associated Builders Contractors v. Hartford, supra, 21 Conn. 185-186.
Standing on behalf of members
The first requirement of the test for associational standing, as set forth in Hunt v. Washington State Apple Advertising Commission, supra,532 U.S. 343, is that the Society's members themselves have standing to assert a CUTPA claim. Connecticare asserts that the conditions of which the Society complains arise from the operation of its contracts not with individual physicians but with group practices and other organizations employing doctors, which Connecticare refers to as "provider organizations." Connecticare argues that the individual physicians who are members of the Society would themselves lack standing to assert CUTPA claims, and that the Society therefore lacks standing to assert CUTPA claims on their behalf. Connecticare overlooks the fact that standing to assert a CUTPA claim is not limited to contracting parties but extends to those who suffer an ascertainable loss "as a result of the use or employment of a method, act or practice prohibited by section 42-110b." Conn. Gen. Stat. § 42-110g. In Jackson v. R.G. Whipple, Inc.,225 Conn. 705, 722-727, the Connecticut Supreme Court rejected the view that privity was required in the context of a CUTPA claim. The Court held narrowly in that case, however, that a party injured as a result of the actions of his opponent's attorney had no claim under CUTPA because of the duty of attorneys to act solely in the interest of their clients. Id.
The second requirement, germaneness to the Society's own purposes, is satisfied by the allegations of the complaint, read in the manner CT Page 4146 required for a motion to dismiss. The Society has alleged that it exists to advance the interests of its members, whose income, professional independence and freedom to render quality care to patients are allegedly affected by the claimed CUTPA violation.
The third requirement, however, is not met. The crux of this requirement is that an association is not the appropriate plaintiff if the party with an immediate stake in the issue raised will need to be heavily involved in the case, that is, the "diligent advocacy" issue identified in Maloney v. Pac, supra, 183 Conn. 321. Hunt v. WashingtonState Apple Advertising Commission, supra, involved an association with members who alleged a direct injury, not one that resulted from transactions with other entities with which they were affiliated; accordingly, the issue whether the association was a proper plaintiff was articulated in that case as an inquiry whether the participation of the members themselves was required. In the present action, the defendant is alleged to have enacted harm on members through its operation of contracts with the provider organizations that employ individual physicians, or with whom the physicians are affiliated in practice entities of various sorts, such as professional corporations. The appropriate inquiry under the third Hunt criterion, therefore, is whether the participation of provider organizations is required.
The court finds that it is. The plaintiff Society seeks not declaratory relief from a clear, uniform policy, as in Association of Not-for-ProfitProviders for the Aging v. Department of Social Services, supra,244 Conn. 378, but injunctive relief concerning the operation of contracts into which the provider organizations have entered. Those entities, who have not joined the plaintiff in bringing this suit, may have interests of their own in continuing the contracts as they are, or they may favor some of the procedures that individual physicians consider deleterious. The contracting entities are very probably indispensable parties to this suit, pursuant to Conn. Gen. Stat. § 52-102, as the relief sought will affect their contractual rights and interests. The intent of the parties in entering into the various contracts may very well be an issue in determining whether the acts challenged in the complaint are actionable under CUTPA, and the participation of the provider organizations is likely to be necessary.
In State Medical Society v. Board of Examiners in Podiatry, supra,203 Conn. 304-305, the Supreme Court concluded that where a medical society challenged an administrative policy of general application to doctors as a whole, and the society sought a change in that policy, "neither the claim asserted nor the relief requested requires the participation of individual members of the medical society." Id., 304. In the case before this court, proof of the alleged unfair trade practices CT Page 4147 will require proof of actions taken with regard to particular provider organizations with which Connecticare has contracts and of the effect on the individual members of those groups who are Society members.
Additionally, caselaw concerning CUTPA suggests the need for participation by the provider organizations that are alleged to have experienced the conduct at issue. In construing CUTPA, the Connecticut Supreme Court has noted that some apparent CUTPA violations may not be actionable because they proceed from inadvertence rather than from policy. See Gaynor v. Union Trust Co., 216 Conn. 458, 477 (1990). Evidence of calculations, communications and interactions concerning multiple provider organizations is likely to be necessary to establish that the conduct claimed to constitute a trade practice actually is a practice and not an inadvertent event. For example, the plaintiff claims that its members suffer the effects of tardy payments by Connecticare. Proof of this claim may include explanations based on the timeliness of the provider organizations' own claim-processing operations; and evidence concerning a single group's experience may not establish any common practice but only an idiosyncratic transaction. The Society observes that proof of individual damages would not be required because it seeks only injunctive relief Given the nature of the claims, however, participation of individual members is necessary to establish entitlement to injunctive relief since the claims are based on alleged conduct and not on the across-the-board operation of a regulation or administrative ruling, as in State Medical Society v. Board of Examiners in Podiatry, supra,203 Conn. 295.
Examination of the prayer for relief confirms the need for participation by members. The Society seeks an injunction restraining Connecticare from, among other things, "[u]nderbudgeting for the hospital, physician and pharmacy Funds of the Contracting Entities in which the CSMS physicians are members" and "[c]harging contracting entities for services that are contractually required to be carved out of those funds." Ascertaining what is "under-budgeting" and the intent of the parties with regard to the contracts necessarily requires the participation of the provider organizations with which the Society's members are affiliated. The Society has observed that universal and uniform aggrievement of members is not necessary where claims for injunctive relief require merely a general declaration of the legality of a practice, Association of Not-for-Proft Porviders for the Aging v.Dept. of Social Services, supra, 244 Conn. 387-88. This court's focus is not, however, on whether all members are aggrieved in the same way, but rather on the fact that the participation of provider organizations is required on the basic issue of whether to grant a remedy at all, because, as parties to contracts, they have an interest in the particular injunctive relief that might be awarded and enforced, and their CT Page 4148 participation and the participation of the physicians affiliated with them is necessary to the adjudication of the CUTPA claims.
The court concludes that the plaintiff lacks standing to assert the alleged CUTPA claims on behalf of its members.
Standing on its own behalf
The Society asserts that even if it lacks standing to pursue the claims based on injury to its members, it has standing to assert claims based on injury to itself The Society alleges that "in its own capacity [it has] . . . been injured by the egregious acts and practices of defendant as set forth in this Amended Complaint" (Amended Complaint, para. 3), and that "[Connecticare's] wrongful conduct also causes direct injury to [the Society] because [the Society] has been, and continues to be, frustrated by defendant's practices in its efforts to achieve its purpose and [the Society] has been required to devote significant resources to dealing with the issues concerning defendant's unfair practices" (Amended Complaint, para. 11). The Society also alleges that it has been "frustrated by defendant's practices in its efforts to assist its physician members in providing top quality care to their patients, and. . . . [the Society] has been forced to commit a tremendous amount of staff time to discussing and addressing with its members their complaints about and problems with CCI's practices, all of which was paid for by [the Society]." (Amended complaint, paras. 38, 46), and "counsel[ling] physicians in an effort to identify and counteract the harm caused by defendant." (Amended complaint, para 46.)
In Havens Realty Corp. v. Coleman, supra, 455 U.S. 363, the Supreme Court recognized that an association that alleged a direct injury to itself had standing to sue for relief from that injury. Unlike the plaintiffs in Warth v. Seldin, supra, 422 U.S. 499-500, and United Statesv. SCRAP, 412 U.S. 669, 687-88, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973), the Society does not allege merely a philosophical interest in a matter of public concern, but an actual injury to itself.
The movant has cited a number of federal trial court rulings in which the trial courts have either found the allegations of the complaint were not the same as those made in Havens Realty Corp. v. Coleman, supra, seeNational Congress for Puerto Rican Rights v. City of New York,75 F. Sup.2d 154 (1999); or have decided that the alleged direct interest was not proven, see American Medical Association v. UnitedHealthcare, 2001 U.S. Dist. Lexis 10818 (S.D.N.Y.), (decided upon a motion for summary judgment after the parties had filed submissions concerning the material facts). CT Page 4149
In Project Sentinel v. Evergreen Ridge Apartments, 40 F. Sup.2d 1136
(N.D. Cal. 1999), the district court noted an important distinction in its ruling granting dismissal on the basis of an insufficient allegation of an actual injury to a direct interest of the plaintiff association. The court found that where the only diversion of resources alleged was a reference to the resources devoted to the lawsuit at issue, the requirements for standing were not met. The court explained that "[i]n other words, an organization establishes an Article III injury if it alleges that unlawful action has increased the resources the group must devote to programs independent of its suit challenging the unlawful action." Id., 1138.
In another case cited by the movant, the determination of lack of standing was made not on a motion to dismiss but on appeal, and the appellate court had an opportunity to review not merely pleadings but the evidence adduced at trial when it concluded that "there is no evidence that [the statute being challenged by the association] has subjected [the association] to operational costs beyond those normally expended to review, challenge, and educate the public about revenue-related legislation." National Taxpayers Union, Inc. v. United States,68 F.3d 1428, 1434 (D.C. Cir. 1995). The claims of the associations that were co-plaintiffs in Guckenberger v. Boston University, 957 F. Sup. 306,320 (D. Mass. 1997), were dismissed because the claims of direct injury made in their brief were not pleaded as allegations of injury in the complaint, which contained allegations only that they expected to expend resources to challenge the defendant's policy at issue in the suit. The dismissal of the association's direct claim in Risinger v. Concannon,117 F. Sup.2d 61, 68 (D. Me. 2000), was the result of the fact that "the First Circuit has promulgated a heightened pleading requirement for the purposes of standing, requiring a plaintiff to `set forth reasonably definite factual allegations, either direct or inferential, regarding each material element needed to sustain standing.' U.S. v. AVX Corp.,962 F.2d 108, 115 (1st Cir. 1992)."
The pleading rules applicable to the present motion are those supplied not by the First Circuit but by the Connecticut Practice Book. Under those provisions, if the movant desired a more specific statement of the claims of direct injury to the Society, it could have filed a request to revise. Where no such request has been filed, pursuant to Ganim v. Smith Wesson Corp., supra, 258 Conn. 326, and Cummings v. Tripp, supra,204 Conn. 67, the court construes the allegations of the complaint in the manner most favorable to the pleader, and there is no basis for dismissal for failure to plead to a level of detail that the movant has not requested.
The appellate rulings counsel that standing is not to be determined by CT Page 4150 whether the injury an association alleges that it has suffered precisely matches the injury at issue in Havens Realty Corp. v. Coleman, supra, but only whether the association alleges in the complaint that it has suffered some injury that is not merely a blow to its philosophical position on an issue. See Ragin v. Harry Macklowe Real Estate Co.,6 F.3d 898, 904-05 (2d Cir. 1993).
The Society has alleged that because of the defendant's practices it has had to devote resources not simply to challenging the defendant's perceived misconduct, but to "hand[ling] physician inquiries and counsel[ling] physicians" not only to identify but to "counteract" the claimed harm. Though it is possible that at trial it may turn out that these efforts are actually efforts that are part of the Society's challenge to the defendant's practices, the court has no way of knowing whether this is so. The rather general allegations might refer, for example, to running a consultation service to resolve ethical quandaries of physicians confronted by what they may feel to be competing obligations to the defendant and to their patients.
In stating what the direct injuries to the associations were in HavensRealty Corp. v. Coleman, supra, 455 U.S. 363, and Ragin v. Harry MackloweReal Estate Co., supra, 6 F.3d 898, it does not appear at all likely that the federal courts were limiting standing to those associations that alleged only the same injuries. The Society alleges more than an abstract or philosophical interest, and more than the need to spend money to pursue this suit in order to attempt to obtain relief for its members.
Because this case is now before the court not after trial on the merits but only on a motion to dismiss, a setting in which the allegations of the complaint must be construed in favor of the pleader, Ganim v. Smith Wesson Corp, supra, 258 Conn. 326, Cummings v. Tripp, supra, 204 Conn. 75;Brewster v. Brewster, supra, 152 Conn. 233; it would be inappropriate for this court to delve into the ability or inability of the Society to prove particular diversions of resources caused by Oxford's alleged unfair trade practices. The court finds that the Society has sufficiently alleged direct injury to itself, and that it has standing to bring suit to address that injury.
Ratification of Society's Decision to Bring Suit
The defendant asserts that the suit must be dismissed because the Society was not duly authorized to institute it. Exhibit H establishes that on February 13, 2001, the Council of the Connecticut State Medical Society held a meeting at which the counsel voted to "approve the immediate launching of state court actions against Anthem, Aetna, Oxford, PHS, Cigna and Connecticare." Article VII of the Society's CT Page 4151 Charter authorizes the Council to hire counsel and to act as the executive and administrative body of the Society. (Ex. I). The court finds that Connecticare has failed to prove this ground for dismissal.
Prior Pending Action Doctrine
Connecticare alleges that because a provider organization it sued in 1999 filed a counterclaim asserting that some of the acts alleged by the Society violated CUTPA, the Society's suit is barred by the prior pending action doctrine. The Society was not a party in that suit, Connecticare,Inc. v. Northwest Medical Group, LLC and Wendy Kroll, Superior Court, judicial district of Hartford, Docket No. CV 00 0595121S. The mere recitation of the rule on prior pending actions defeats Connecticare's invocation of it:
 The pendency of a prior suit of the same character, between the same parties, brought to obtain the same end or object, is, at common law, good cause for abatement. It is so, because there cannot be any reason or necessity for bringing the second, and, therefore, it must be oppressive and vexatious.
(Emphasis supplied.) Halpern v. Board of Education, 196 Conn. 647, 652
(1985).
The movant has cited no case in which a suit brought by another party barred an association's right to bring suit on its own behalf. The differences between the parties in the two suits are not superficial, as in Gaudio v Gaudio, 23 Conn. App. 287, 296 (1990); rather, the CUTPA claimants in this case and those in the case identified by the movant are distinct parties with no demonstrated legal relationship. The prior pending action doctrine is inapplicable.
Claimed ERISA Preclusion
The final ground asserted in the motion to dismiss is that this court lacks subject matter jurisdiction because the Society's CUTPA claim against Connecticare is pre-empted by the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq. The pre-emption provision of ERISA, 29 U.S.C. § 1144 (a), states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."
The United States Supreme Court's formulation of a standard for determining whether a state law "relates to" any employee benefit plan has evolved during the last two decades. In Shaw v. Delta Air Lines,CT Page 4152Inc., 463 U.S. 85, 96-97, 77 L.Ed.2d 490, 103 S.Ct. 2890 (1983), the Court determined the application of the pre-emption provision by construing the phrase "relates to." In that case, the Court stated that "[a] law `relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such plan." See also District of Columbia v. Greater Washington Board of Trade,506 U.S. 125, 129-30 (1992).
The Supreme Court began to appreciate that a literal reading of "relates to" would give the pre-emption provision a reach so limitless as to remove any real meaning from that provision. In New York Blue Crossv. Travelers Insurance, 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695
(1995), which concerned a state law allowing hospitals to charge a surcharge to some but not all insurance plans that provided employee health coverage, the Court turned away from an approach of narrow literalism in construing § 1144(a) and instead ruled that the pre-emption provision must be construed in a manner that accomplished the objectives Congress had meant it to serve:
 In Shaw we explained that "[a] law `relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or a reference to such a plan, 463 U.S 96-97. . . . But this still leaves us to question whether the surcharge laws have a `connection with' the ERISA plans, and here an uncritical literalism is no more help than in trying to construe `relate to.' For the same reasons that infinite relations cannot be the measure of pre-emption, neither can infinite connections. We simply must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive.
New York Blue Cross v. Travelers Insurance, supra, 514 U.S. 656.
The administrators of employee benefit plans that invoked the pre-emption provision in New York Blue Cross v. Travelers Insurance,
supra, asserted that the state law concerning surcharges for medical services would have a profound effect on the administration of ERISA plans that had to pay those surcharges. Assessing the claim that such an effect meant that the surcharge legislation "related to" an ERISA plan and was therefore pre-empted, the Supreme court reasoned that Congress must not be presumed to have sweepingly set aside state regulation of health care and affirmed "the assumption that the historic police powers CT Page 4153 of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." New York Blue Cross v.Travelers Insurance, supra, 514 U.S. 655, quoting Rice v. Santa FeElevator Corp., 331 U.S. 218, 230 (1947).
In an unusual judicial resort to the words of a novelist not noted for his simplicity of construction, the Court quoted Henry James' novelRoderick Hudson, xli (New York Ed. World's Classics 1980):
 If "relate to" were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes, pre-emption would never run its course, for "[r]eally, universally, relations stop nowhere."
New York Blue Cross v. Travelers Insurance, supra, 514 U.S. 655. In subsequent considerations of ERISA's pre-emption provision, the Court has continued to rule that a limitless reach for the phrase "relates to" would invade areas of regulation traditionally occupied by the states.DeBuono v. NYSA-ILA Medical Services Fund, 520 U.S. 806, 814,117 S.Ct. 1747, 138 L.Ed.2d 21 (1997).; California Div. of Labor StandardsEnforcement v. Dillingham Construction, N.A., Inc., 519 U.S 316, 325,117 S.Ct. 832, 136 L.Ed.2d 791 (1997).
The Court has stepped back from the construction that any state law which even indirectly has even an indirect effect on an employee benefit plan is pre-empted by ERISA. It explained in New York Blue Cross that the purpose of pre-emption was to protect employee benefit plans from having to comply with varying requirements of coverage or administration in various states in order to permit the nationally uniform administration of employee benefit plans. New York Blue Cross v. Travelers Insurance,
supra, 514 U.S. 657-58 (noting that its earlier cases had involved only clear imposition of requirements on the scope or coverage of ERISA plans). For example, in Shaw v. Delta Airlines, Inc., supra, a state law requiring a benefits plan to include provisions coverage for pregnancy was held to be pre-empted, since it put the benefit plan in the position of having to provide different benefits in one state than in other states under the same plan. Likewise, a state statute that mandated a survivor's annuity in an employee benefit plan was pre-empted, Boggs v. Boggs,520 U.S. 833, 117 S.Ct. 1758, 138 L.Ed.2d 45, rehearing denied,521 U.S. 1138 (1997), as were provisions of state law that required a particular rule for determining who the beneficiary of a deceased plan member was. Egelhoff v. Egelhoff, 532 U.S. 141, 121 S.Ct. 1322,149 L.Ed.2d 264 (2001).
Under the "meeting the objectives" test in New York Blue Cross v.Travelers Insurance, supra, the Supreme Court held that a state wage CT Page 4154 statute of general application to a specific category of workers did not "relate to" an employee benefit plan even though it affected the wages that had to be paid to apprentices hired through such a plan. CaliforniaDiv. of Labor Standards v Dillingham Constrution, NA, Inc., supra,519 U.S. 316. The Court also held that a tax on the gross receipts of medical centers did not "relate to" an employee benefit plan, even though the effect of the tax could have an impact on such plans and their costs. DeBuono v. NYSA-ILA Med Service Fund, supra, 520 U.S. 806.
While the post-New York Blue Cross holdings cited above suggest a bright line test between those state laws that require ERISA plans to contain particular provisions and those state laws that merely have an impact on such plans, the Supreme Court cautioned in New York Blue Cross
that it was not ruling that the pre-emption provision applies only to direct regulation of the contents of ERISA plans because "[w]e acknowledge that a state law might produce such acute, albeit indirect, economic effects, by intent or otherwise, as to force an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict its choice of insurers, and that such a state law may indeed be pre-empted under § 514." New York Blue Cross v. Travelers Insurance,
supra, 514 U.S. 668. However, it found that a New York statute that allowed hospitals to bill some insurers on a different basis than others, with the potential effect of causing patients to opt for the plan that was more favorably treated, did not "relate to" the employee benefit plan because the differential rate system did not have the effect of precluding uniform administrative practice or the provision of a uniform interstate benefit package but simply bore on the cost of benefits. Id.
CUTPA is not a statute that specifically addresses employee benefit plans either as to their substantive provisions or their administration, and the Society does not request any injunctive relief that either requires particular benefits or standards in benefits to plan enrollees or that could be expected to have an effect so drastic as to lead to changes in the provisions of the benefit plans offered to enrollees. Connecticare asserts that the allocations of utilization costs of which the Society complains are "determinations made in accordance with the provisions of specific employee benefit plans" (Brief, Feb. 4, 2002, p. 16), but it has not provided the court with any benefit plan document in which its arrangements for compensating doctors or allocating utilization rates is a feature of the benefits to employees, and the court does not give any credence to so unlikely a proposition. At most, Connecticare's dealings with providers, like the tax laws, wage laws and rate differentials in New York Blue Cross, supra, Dillingham, supra, andDeBuono, supra, have an indirect effect on the employee benefit plans by affecting the cost to Connecticare of providing the benefits offered to enrollees. The relief that the plaintiff seeks under CUTPA does not, CT Page 4155 however, impair the Congressional objective of having plans that may be national in their provisions, nor does a CUTPA action based on practices in compensating doctors pose a risk that the benefit plan cannot be uniform in various states.
The specific terms of injunctive relief requested concern the way Connecticare calculates and allocates the costs of care provided to plan enrollees for purposes of arriving at compensation to the provider organizations that furnish the actual medical services. All of the requests for injunctive relief relate to practices that are claimed to unfairly reduce compensation to organizations that provide care. None of the requests for injunctive relief addresses the scope of the benefits to be provided to enrollees. The Society seeks relief from what it alleges are overcharges and misallocations that result in medical practices being held to have over-provided services whose costs are then allocated as a deficit to be made up by the practices to Connecticare if the practices leave Connecticare. For example, the Society requests an injunction prohibiting Connecticare from "(b) (iii) Charging Contracting Entities' Funds at 100% of billed costs on certain services, such as home health services, for which CCI is contractually required to charge a discounted rate" and "vii. charging Contracting Entities' Funds for the same service more than once." The references to contracts in these prayers for relief are to the contracts between Connecticare and providers, not the ERISA benefit plans.
Injunctive relief that merely affects bookkeeping concerning compensation due to the medical providers under their contracts with Connecticare does not affect the entitlements of enrollees in the employee benefit plan nor the ability of the employee benefit plan to offer uniform benefit plans nationwide. The federal Court of Appeals for the Second Circuit has ruled that state laws that provide for suits on bonds to recover unpaid employee benefits along with other unpaid labor or material charges are not pre-empted by ERISA, even though the application of the statutory procedure has an economic effect on the benefit plans. Bleiler v. Cristwood Construction, Inc. 72 F.3d 13 (2d Cir. 1995). The Connecticut Appellate Court, citing Bleiler, has held that Conn. Gen. Stat. § 49-42, which allows suit on a bond for unpaid ERISA plan contributions, is not pre-empted by ERISA. Eacott v. InsuranceCo. of North America., 40 Conn. App. 777, 782-83 (1996).
The relief the Society seeks under CUTPA does not interfere with the objectives that led Congress to provide for pre-emption of state laws, and the regulation of Connecticare's business practices toward providers of medical services does not "relate to" employee benefit plans and is therefore not subject to pre-emption pursuant to 29 U.S.C. § 1144
(a). Like the state statutes at issue in New York Blue Cross, supra, CT Page 4156DeBuono, supra, and Dillingham, supra, CUTPA is a regulatory statute that operates in an area traditionally subject to local regulation, and it seems most unlikely that Congress meant 29 U.S.C. § 1144 (a) to pre-empt its operation.
Conclusion
For the foregoing reasons, the motion to dismiss is granted as to those claims that the Society seeks to assert on behalf of its members. The motion is denied as to the claims that the Society asserts on its own behalf
______________________________ Beverly J. Hodgson Date Judge of the Superior Court